# UNITED STATES *v.* OAKLAND CANNABIS BUYERS' COOPERATIVE ET AL.

No. 00–151.   Argued March 28, 2001—Decided May 14, 2001

484

*Acting Solicitor General Underwood* argued the cause for the United States. With her on the briefs were former *Solicitor General Waxman, Assistant Attorney General Ogden, Deputy Solicitor General Kneedler,* and *Lisa Schiavo Blatt.*

*Gerald F. Uelmen* argued the cause for respondents. With him on the brief were *James J. Brosnahan, Annette P. Carnegie, Christina Kirk-Kazhe, Robert A. Raich,* and *Randy E. Barnett.**

---

**Janet M. LaRue* filed a brief for the Family Research Council as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the State of California by *Bill Lockyer,* Attorney General, and *David De Alba,* Special Assistant Attorney General; for the American Civil Liberties Union et al. by *Steven R. Shapiro, Daniel P. Tokaji,* and *Jordan C. Budd;* for the American Public Health Association et al. by *Daniel N. Abrahamson;* for the Marijuana Policy Project et al. by *Cheryl Flax-Davidson;* for the National Organization for the Reform of Marijuana Laws et al. by *R. Keith Stroup, John Wesley Hall, Jr.,* and *Lisa B. Kemler;* for Edward Neil Brundridge et al. by *Thomas V. Loran III;* and for Sheriff Mark N. Dion et al. by *Julie M. Carpenter.*

Briefs of *amici curiae* were filed for the California Medical Association et al. by *Catherine I. Hanson* and *Alice P. Mead;* and for the Institute on Global Drug Policy of the Drug Free America Foundation et al. by *David G. Evans* and *John E. Lamp.*

JUSTICE THOMAS delivered the opinion of the Court.

The Controlled Substances Act, 84 Stat. 1242, 21 U. S. C. § 801 *et seq.*, prohibits the manufacture and distribution of various drugs, including marijuana. In this case, we must decide whether there is a medical necessity exception to these prohibitions. We hold that there is not.

I

In November 1996, California voters enacted an initiative measure entitled the Compassionate Use Act of 1996. Attempting "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes," Cal. Health & Safety Code Ann. § 11362.5 (West Supp. 2001), the statute creates an exception to California laws prohibiting the possession and cultivation of marijuana. These prohibitions no longer apply to a patient or his primary caregiver who possesses or cultivates marijuana for the patient's medical purposes upon the recommendation or approval of a physician. *Ibid.* In the wake of this voter initiative, several groups organized "medical cannabis dispensaries" to meet the needs of qualified patients. *United States* v. *Cannabis Cultivators Club*, 5 F. Supp. 2d 1086, 1092 (ND Cal. 1998). Respondent Oakland Cannabis Buyers' Cooperative is one of these groups.

The Cooperative is a not-for-profit organization that operates in downtown Oakland. A physician serves as medical director, and registered nurses staff the Cooperative during business hours. To become a member, a patient must provide a written statement from a treating physician assenting to marijuana therapy and must submit to a screening interview. If accepted as a member, the patient receives an identification card entitling him to obtain marijuana from the Cooperative.

In January 1998, the United States sued the Cooperative and its executive director, respondent Jeffrey Jones (to-

gether, the Cooperative), in the United States District Court for the Northern District of California. Seeking to enjoin the Cooperative from distributing and manufacturing marijuana,[1] the United States argued that, whether or not the Cooperative's activities are legal under California law, they violate federal law. Specifically, the Government argued that the Cooperative violated the Controlled Substances Act's prohibitions on distributing, manufacturing, and possessing with the intent to distribute or manufacture a controlled substance. 21 U. S. C. § 841(a). Concluding that the Government had established a probability of success on the merits, the District Court granted a preliminary injunction. App. to Pet. for Cert. 39a–40a; 5 F. Supp. 2d, at 1105.

The Cooperative did not appeal the injunction but instead openly violated it by distributing marijuana to numerous persons, App. to Pet. for Cert. 21a–23a. To terminate these violations, the Government initiated contempt proceedings. In defense, the Cooperative contended that any distributions were medically necessary. Marijuana is the only drug, according to the Cooperative, that can alleviate the severe pain and other debilitating symptoms of the Cooperative's patients. *Id.*, at 29a. The District Court rejected this defense, however, after determining there was insufficient evidence that each recipient of marijuana was in actual danger of imminent harm without the drug. *Id.*, at 29a–32a. The District Court found the Cooperative in contempt and, at the Government's request, modified the preliminary injunction to empower the United States Marshal to seize the Cooperative's premises. *Id.*, at 37a. Although recognizing that

---

[1] The Government requested, and the District Court granted, an injunction that prohibited the possession of marijuana with the intent to manufacture and distribute, as well as the distribution and manufacture of marijuana. For simplicity, in this opinion, we refer to these activities collectively as distributing and manufacturing marijuana. The legal issues are the same for all of these activities.

"human suffering" could result, the District Court reasoned that a court's "equitable powers [do] not permit it to ignore federal law." *Ibid.* Three days later, the District Court summarily rejected a motion by the Cooperative to modify the injunction to permit distributions that are medically necessary.

The Cooperative appealed both the contempt order and the denial of the Cooperative's motion to modify. Before the Court of Appeals for the Ninth Circuit decided the case, however, the Cooperative voluntarily purged its contempt by promising the District Court that it would comply with the initial preliminary injunction. Consequently, the Court of Appeals determined that the appeal of the contempt order was moot. 190 F. 3d 1109, 1112–1113 (1999).

The denial of the Cooperative's motion to modify the injunction, however, presented a live controversy that was appealable under 28 U. S. C. § 1292(a)(1). Reaching the merits of this issue, the Court of Appeals reversed and remanded. According to the Court of Appeals, the medical necessity defense was a "legally cognizable defense" that likely would apply in the circumstances. 190 F. 3d, at 1114. Moreover, the Court of Appeals reasoned, the District Court erroneously "believed that it had no discretion to issue an injunction that was more limited in scope than the Controlled Substances Act itself." *Id.*, at 1114–1115. Because, according to the Court of Appeals, district courts retain "broad equitable discretion" to fashion injunctive relief, the District Court could have, and should have, weighed the "public interest" and considered factors such as the serious harm in depriving patients of marijuana. *Ibid.* Remanding the case, the Court of Appeals instructed the District Court to consider "the criteria for a medical necessity exemption, and, should it modify the injunction, to set forth those criteria in the modification order." *Id.*, at 1115. Following these instructions, the District Court granted the Cooperative's

motion to modify the injunction to incorporate a medical necessity defense.[2]

The United States petitioned for certiorari to review the Court of Appeals' decision that medical necessity is a legally cognizable defense to violations of the Controlled Substances Act. Because the decision raises significant questions as to the ability of the United States to enforce the Nation's drug laws, we granted certiorari. 531 U. S. 1010 (2000).

## II

The Controlled Substances Act provides that, "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U. S. C. § 841(a)(1). The subchapter, in turn, establishes exceptions.

---

[2] The amended preliminary injunction reaffirmed that the Cooperative is generally enjoined from manufacturing, distributing, and possessing with the intent to manufacture or distribute marijuana, but it carved out an exception for cases of medical necessity. Specifically, the District Court ordered that "[t]he foregoing injunction does not apply to the distribution of cannabis by [the Cooperative] to patient-members who (1) suffer from a serious medical condition, (2) will suffer imminent harm if the patient-member does not have access to cannabis, (3) need cannabis for the treatment of the patient-member's medical condition, or need cannabis to alleviate the medical condition or symptoms associated with the medical condition, and (4) have no reasonable legal alternative to cannabis for the effective treatment or alleviation of the patient-member's medical condition or symptoms associated with the medical condition because the patient-member has tried all other legal alternatives to cannabis and the alternatives have been ineffective in treating or alleviating the patient-member's medical condition or symptoms associated with the medical condition, or the alternatives result in side effects which the patient-member cannot reasonably tolerate." App. to Pet. for Cert. 16a–17a.

The United States appealed the District Court's order amending the preliminary injunction. At the Government's request, we stayed the order pending the appeal. 530 U. S. 1298 (2000). The Court of Appeals has postponed oral argument pending our decision in this case.

For marijuana (and other drugs that have been classified as "schedule I" controlled substances), there is but one express exception, and it is available only for Government-approved research projects, § 823(f). Not conducting such a project, the Cooperative cannot, and indeed does not, claim this statutory exemption.

The Cooperative contends, however, that notwithstanding the apparently absolute language of § 841(a), the statute is subject to additional, implied exceptions, one of which is medical necessity. According to the Cooperative, because necessity was a defense at common law, medical necessity should be read into the Controlled Substances Act. We disagree.

As an initial matter, we note that it is an open question whether federal courts ever have authority to recognize a necessity defense not provided by statute. A necessity defense "traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils." *United States* v. *Bailey*, 444 U. S. 394, 410 (1980). Even at common law, the defense of necessity was somewhat controversial. See, *e. g., Queen* v. *Dudley &* *Stephens*, 14 Q. B. 273 (1884). And under our constitutional system, in which federal crimes are defined by statute rather than by common law, see *United States* v. *Hudson*, 7 Cranch 32, 34 (1812), it is especially so. As we have stated: "Whether, as a policy matter, an exemption should be created is a question for legislative judgment, not judicial inference." *United States* v. *Rutherford*, 442 U. S. 544, 559 (1979). Nonetheless, we recognize that this Court has discussed the possibility of a necessity defense without altogether rejecting it. See, *e. g., Bailey, supra*, at 415.[3]

---

[3] The Cooperative is incorrect to suggest that *Bailey* has settled the question whether federal courts have authority to recognize a necessity defense not provided by statute. There, the Court rejected the necessity defense of a prisoner who contended that adverse prison conditions justified his prison escape. The Court held that the necessity defense is un-

We need not decide, however, whether necessity can ever be a defense when the federal statute does not expressly provide for it. In this case, to resolve the question presented, we need only recognize that a medical necessity exception for marijuana is at odds with the terms of the Controlled Substances Act. The statute, to be sure, does not explicitly abrogate the defense.[4] But its provisions leave no doubt that the defense is unavailable.

Under any conception of legal necessity, one principle is clear: The defense cannot succeed when the legislature itself has made a "determination of values." 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.4, p. 629 (1986). In the case of the Controlled Substances Act, the statute reflects a determination that marijuana has no medical benefits worthy of an exception (outside the confines of a Government-approved research project). Whereas some other drugs can be dispensed and prescribed for medical use, see 21 U. S. C. § 829, the same is not true for marijuana. Indeed, for purposes of the Controlled Substances Act, marijuana has "no currently accepted medical use" at all. § 812.

The structure of the Act supports this conclusion. The statute divides drugs into five schedules, depending in part on whether the particular drug has a currently accepted

---

available to prisoners, like Bailey, who fail to present evidence of a bona fide effort to surrender as soon as the claimed necessity had lost its coercive force. 444 U. S., at 415. It was not argued, and so there was no occasion to consider, whether the statute might be unable to bear any necessity defense at all. And although the Court noted that Congress "legislates against a background of Anglo-Saxon common law" and thus "may" have contemplated a necessity defense, the Court refused to "balanc[e] [the] harms," explaining that "we are construing an Act of Congress, not drafting it." Id., at 415–416, n. 11.

[4] We reject the Cooperative's intimation that elimination of the defense requires an "explici[t]" statement. Brief for Respondents 21. Considering that we have never held necessity to be a viable justification for violating a federal statute, see supra, at 490, and n. 3, and that such a defense would entail a social balancing that is better left to Congress, we decline to set the bar so high.

medical use. The Act then imposes restrictions on the manufacture and distribution of the substance according to the schedule in which it has been placed. Schedule I is the most restrictive schedule.[5] The Attorney General can include a drug in schedule I only if the drug "has no currently accepted medical use in treatment in the United States," "has a high potential for abuse," and has "a lack of accepted safety for use . . . under medical supervision." §§ 812(b)(1)(A)–(C). Under the statute, the Attorney General could not put marijuana into schedule I if marijuana had any accepted medical use.

The Cooperative points out, however, that the Attorney General did not place marijuana into schedule I. Congress put it there, and Congress was not required to find that a drug lacks an accepted medical use before including the drug in schedule I. We are not persuaded that this distinction has any significance to our inquiry. Under the Cooperative's logic, drugs that Congress places in schedule I could be distributed when medically necessary whereas drugs that the Attorney General places in schedule I could not. Nothing in the statute, however, suggests that there are two tiers of schedule I narcotics, with drugs in one tier more readily available than drugs in the other. On the contrary, the statute consistently treats all schedule I drugs alike. See, e. g., § 823(a) (providing criteria for Attorney General to consider when determining whether to register an applicant to manufacture schedule I controlled substances), § 823(b) (providing criteria for Attorney General to consider when determining whether to register an applicant to distribute schedule I controlled substances), § 823(f) (providing procedures for becoming a government-approved research project), § 826 (establishing production quotas for schedule I drugs). Moreover,

---

[5] As noted, *supra,* at 490, the only express exception for schedule I drugs is the Government-approved research project, see 21 U. S. C. § 823(f). Unlike drugs in other schedules, see § 829, schedule I drugs cannot be dispensed under a prescription.

the Cooperative offers no convincing explanation for why drugs that Congress placed on schedule I should be subject to fewer controls than the drugs that the Attorney General placed on the schedule. Indeed, the Cooperative argues that, in placing marijuana and other drugs on schedule I, Congress "wishe[d] to assert the most restrictive level of controls created by the [Controlled Substances Act]." Brief for Respondents 24. If marijuana should be subject to the most restrictive level of controls, it should not be treated any less restrictively than other schedule I drugs.

The Cooperative further argues that use of schedule I drugs generally—whether placed in schedule I by Congress or the Attorney General—can be medically necessary, notwithstanding that they have "no currently accepted medical use." According to the Cooperative, a drug may not yet have achieved general acceptance as a medical treatment but may nonetheless have medical benefits to a particular patient or class of patients. We decline to parse the statute in this manner. It is clear from the text of the Act that Congress has made a determination that marijuana has no medical benefits worthy of an exception. The statute expressly contemplates that many drugs "have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people," § 801(1), but it includes no exception at all for any medical use of marijuana. Unwilling to view this omission as an accident, and unable in any event to override a legislative determination manifest in a statute, we reject the Cooperative's argument.[6]

---

[6] The Government argues that the 1998 "sense of the Congress" resolution, 112 Stat. 2681–760 to 2681–761, supports its position that Congress has foreclosed the medical necessity defense. Entitled "Not Legalizing Marijuana for Medicinal Use," the resolution declares that "Congress continues to support the existing Federal legal process for determining the safety and efficacy of drugs and opposes efforts to circumvent this process by legalizing marijuana, and other Schedule I drugs, for medicinal use without valid scientific evidence and the approval of the Food and Drug Administration." Because we conclude that the Controlled Substances

Finally, the Cooperative contends that we should construe the Controlled Substances Act to include a medical necessity defense in order to avoid what it considers to be difficult constitutional questions. In particular, the Cooperative asserts that, shorn of a medical necessity defense, the statute exceeds Congress' Commerce Clause powers, violates the substantive due process rights of patients, and offends the fundamental liberties of the people under the Fifth, Ninth, and Tenth Amendments. As the Cooperative acknowledges, however, the canon of constitutional avoidance has no application in the absence of statutory ambiguity. Because we have no doubt that the Controlled Substances Act cannot bear a medical necessity defense to distributions of marijuana, we do not find guidance in this avoidance principle. Nor do we consider the underlying constitutional issues today. Because the Court of Appeals did not address these claims, we decline to do so in the first instance.

For these reasons, we hold that medical necessity is not a defense to manufacturing and distributing marijuana.[7] The

---

Act cannot sustain the medical necessity defense, we need not consider whether the 1998 "sense of the Congress resolution" is additional evidence of a legislative determination to eliminate the defense.

[7] Lest there be any confusion, we clarify that nothing in our analysis, or the statute, suggests that a distinction should be drawn between the prohibitions on manufacturing and distributing and the other prohibitions in the Controlled Substances Act. Furthermore, the very point of our holding is that there is no medical necessity exception to the prohibitions at issue, even when the patient is "seriously ill" and lacks alternative avenues for relief. Indeed, it is the Cooperative's argument that its patients are "seriously ill," see, e. g., Brief for Respondents 11, 13, 17, and lacking "alternatives," see, e. g., id., at 13. We reject the argument that these factors warrant a medical necessity exception. If we did not, we would be affirming instead of reversing the Court of Appeals.

Finally, we share JUSTICE STEVENS' concern for "showing respect for the sovereign States that comprise our Federal Union." Post, at 502 (opinion concurring in judgment). However, we are "construing an Act of Congress, not drafting it." United States v. Bailey, 444 U. S. 394, 415, n. 11 (1980). Because federal courts interpret, rather than author, the

Court of Appeals erred when it held that medical necessity is a "legally cognizable defense." 190 F. 3d, at 1114. It further erred when it instructed the District Court on remand to consider "the criteria for a medical necessity exemption, and, should it modify the injunction, to set forth those criteria in the modification order." *Id.*, at 1115.

## III

The Cooperative contends that, even if the Controlled Substances Act forecloses the medical necessity defense, there is an alternative ground for affirming the Court of Appeals. This case, the Cooperative reminds us, arises from a motion to modify an injunction to permit distributions that are medically necessary. According to the Cooperative, the Court of Appeals was correct that the District Court had "broad equitable discretion" to tailor the injunctive relief to account for medical necessity, irrespective of whether there is a legal defense of necessity in the statute. *Id.*, at 1114. To sustain the judgment below, the argument goes, we need only reaffirm that federal courts, in the exercise of their equity jurisdiction, have discretion to modify an injunction based upon a weighing of the public interest.[8]

We disagree. Although district courts whose equity powers have been properly invoked indeed have discretion in fashioning injunctive relief (in the absence of a statutory restriction), the Court of Appeals erred concerning the factors that the district courts may consider in exercising such discretion.

---

federal criminal code, we are not at liberty to rewrite it. Nor are we passing today on a constitutional question, such as whether the Controlled Substances Act exceeds Congress' power under the Commerce Clause.

[8] Notwithstanding JUSTICE STEVENS' concerns, *post*, at 502–503, it is appropriate for us to address this issue because this case arises from a motion to modify the injunction, because the Court of Appeals held that the District Court misconstrued its equitable discretion, and because the Cooperative offers this conclusion as an alternative ground for affirmance.

## A

As an initial matter, the Cooperative is correct that, when district courts are properly acting as courts of equity, they have discretion unless a statute clearly provides otherwise. For "several hundred years," courts of equity have enjoyed "sound discretion" to consider the "necessities of the public interest" when fashioning injunctive relief. *Hecht Co.* v. *Bowles,* 321 U. S. 321, 329–330 (1944). See also *id.,* at 329 ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it"); *Weinberger* v. *Romero-Barcelo,* 456 U. S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction"). Such discretion is displaced only by a "clear and valid legislative command." *Porter* v. *Warner Holding Co.,* 328 U. S. 395, 398 (1946). See also *Romero-Barcelo, supra,* at 313 ("Of course, Congress may intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has intended to depart from established principles").

The Cooperative is also correct that the District Court in this case had discretion. The Controlled Substances Act vests district courts with jurisdiction to enjoin violations of the Act, 21 U. S. C. § 882(a). But a "grant of jurisdiction to issue [equitable relief] hardly suggests an absolute duty to do so under any and all circumstances," *Hecht, supra,* at 329 (emphasis deleted). Because the District Court's use of equitable power is not textually required by any "clear and valid legislative command," the court did not have to issue an injunction.

*TVA* v. *Hill,* 437 U. S. 153 (1978), does not support the Government's contention that the District Court lacked discretion in fashioning injunctive relief. In *Hill,* the Court held that the Endangered Species Act of 1973 required the

District Court to enjoin completion of a dam, whose operation would either eradicate the known population of the snail darter or destroy its critical habitat. *Id.,* at 193–195. The District Court lacked discretion because an injunction was the "only means of ensuring compliance." *Romero-Barcelo, supra,* at 314 (explaining why the District Court in *Hill* lacked discretion). Congress' "order of priorities," as expressed in the statute, would be deprived of effect if the District Court could choose to deny injunctive relief. *Hill, supra,* at 194. In effect, the District Court had only a Hobson's choice. By contrast, with respect to the Controlled Substances Act, criminal enforcement is an alternative, and indeed the customary, means of ensuring compliance with the statute. Congress' resolution of the policy issues can be (and usually is) upheld without an injunction.

## B

But the mere fact that the District Court had discretion does not suggest that the District Court, when evaluating the motion to modify the injunction, could consider any and all factors that might relate to the public interest or the conveniences of the parties, including the medical needs of the Cooperative's patients. On the contrary, a court sitting in equity cannot "ignore the judgment of Congress, deliberately expressed in legislation." *Virginian R. Co.* v. *Railway Employees,* 300 U. S. 515, 551 (1937). A district court cannot, for example, override Congress' policy choice, articulated in a statute, as to what behavior should be prohibited. "Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is . . . for the courts to enforce them when enforcement is sought." *Hill,* 437 U. S., at 194. Courts of equity cannot, in their discretion, reject the balance that Congress has struck in a statute. *Id.,* at 194–195. Their choice (unless there is statutory language to the contrary) is simply whether a particular means of enforcing the statute should be chosen over another per-

missible means; their choice is not whether enforcement is preferable to no enforcement at all.[9]  Consequently, when a court of equity exercises its discretion, it may not consider the advantages and disadvantages of nonenforcement of the statute, but only the advantages and disadvantages of "employing the extraordinary remedy of injunction," *Romero-Barcelo*, 456 U. S., at 312, over the other available methods of enforcement.  Cf. *id.*, at 316 (referring to "discretion to rely on remedies other than an immediate prohibitory injunction").  To the extent the district court considers the public interest and the conveniences of the parties, the court is limited to evaluating how such interest and conveniences are affected by the selection of an injunction over other enforcement mechanisms.

## C

In this case, the Court of Appeals erred by considering relevant the evidence that some people have "serious medical conditions for whom the use of cannabis is necessary in order to treat or alleviate those conditions or their symptoms," that these people "will suffer serious harm if they are denied cannabis," and that "there is no legal alternative to cannabis

---

[9] *Hecht Co.* v. *Bowles*, 321 U. S. 321 (1944), for example, held that the District Court was not required to issue an injunction to restrain violations of the Emergency Price Control Act of 1942 and regulations thereunder when "some 'other order' might be more appropriate, or at least so appear to the court." *Id.*, at 328 (quoting statutory provision that enabled district court to issue an injunction, a restraining order, "or other order"). *Weinberger* v. *Romero-Barcelo*, 456 U. S. 305 (1982), held that a District Court had discretion not to issue an injunction precluding the United States Navy from releasing ordnance into water, but to rely on other means of ensuring compliance, including ordering the Navy to obtain a permit. *Id.*, at 314–318.  See also *Amoco Production Co.* v. *Gambell*, 480 U. S. 531, 544–546 (1987) (holding that a District Court did not err in declining to issue an injunction to bar exploratory drilling on Alaskan public lands, because the District Court's decision "did not undermine" the policy of the Alaska National Interest Lands Conservation Act, 16 U. S. C. § 3120, and because the Secretary of the Interior had other means of meaningfully complying with the statute).

for the effective treatment of their medical conditions." 190 F. 3d, at 1115. As explained above, in the Controlled Substances Act, the balance already has been struck against a medical necessity exception. Because the statutory prohibitions cover even 'those who have what could be termed a medical necessity, the Act precludes consideration of this evidence. It was thus error for the Court of Appeals to instruct the District Court on remand to consider "the criteria for a medical necessity exemption, and, should it modify the injunction, to set forth those criteria in the modification order." *Ibid.*

\*     \*     \*

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BREYER took no part in the consideration or decision of this case.

JUSTICE STEVENS, with whom JUSTICE SOUTER and JUSTICE GINSBURG join, concurring in the judgment.

Lest the Court's narrow holding be lost in its broad dicta, let me restate it here: "[W]e hold that medical necessity is not a defense to *manufacturing* and *distributing* marijuana." *Ante,* at 494 (emphasis added). This confined holding is consistent with our grant of certiorari, which was limited to the question "[w]hether the Controlled Substances Act, 21 U. S. C. 801 *et seq.,* forecloses a medical necessity defense to the Act's prohibition against *manufacturing* and *distributing* marijuana, a Schedule I controlled substance." Pet. for Cert. (I) (emphasis added). And, at least with respect to distribution, this holding is consistent with how the issue was raised and litigated below. As stated by the District Court, the question before it was "whether [respondents'] admitted *distribution* of marijuana for use by seri-

ously ill persons upon a physician's recommendation violates federal law," and if so, whether such distribution "should be enjoined pursuant to the injunctive relief provisions of the federal Controlled Substances Act." *United States* v. *Cannabis Cultivators Club*, 5 F. Supp. 2d 1086, 1091 (ND Cal. 1998) (emphasis added).

Accordingly, in the lower courts as well as here, respondents have raised the medical necessity defense as a justification for distributing marijuana to cooperative members, and it was in that context that the Ninth Circuit determined that respondents had "a legally cognizable defense." 190 F. 3d 1109, 1114 (1999). The Court is surely correct to reverse that determination. Congress' classification of marijuana as a schedule I controlled substance—that is, one that cannot be distributed outside of approved research projects, see 21 U. S. C. §§ 812, 823(f), 829—makes it clear that "the Controlled Substances Act cannot bear a medical necessity defense to *distributions* of marijuana," *ante*, at 494 (emphasis added).[1]

Apart from its limited holding, the Court takes two unwarranted and unfortunate excursions that prevent me from joining its opinion. First, the Court reaches beyond its holding, and beyond the facts of the case, by suggesting that the defense of necessity is unavailable for anyone under the

---

[1] In any event, respondents do not fit the paradigm of a defendant who may assert necessity. The defense "traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils." *United States* v. *Bailey*, 444 U. S. 394, 410 (1980); see generally 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.4, pp. 627–640 (1986). Respondents, on the other hand, have not been forced to confront a choice of evils—violating federal law by distributing marijuana to seriously ill patients or letting those individuals suffer—but have thrust that choice upon themselves by electing to become distributors for such patients. Of course, respondents also cannot claim necessity based upon the choice of evils facing seriously ill patients, as that is not the same choice respondents face.

Controlled Substances Act. *Ante*, at 491–493, 494–495, n. 7, 499. Because necessity was raised in this case as a defense to distribution, the Court need not venture an opinion on whether the defense is available to anyone other than distributors. Most notably, whether the defense might be available to a seriously ill patient for whom there is no alternative means of avoiding starvation or extraordinary suffering is a difficult issue that is not presented here.[2]

Second, the Court gratuitously casts doubt on "whether necessity can ever be a defense" to *any* federal statute that does not explicitly provide for it, calling such a defense into question by a misleading reference to its existence as an "open question." *Ante*, at 490, 491. By contrast, our precedent has expressed no doubt about the viability of the common-law defense, even in the context of federal criminal statutes that do not provide for it in so many words. See, *e. g.*, *United States* v. *Bailey*, 444 U. S. 394, 415 (1980) ("We therefore hold that, where a criminal defendant is charged with escape and claims that he is entitled to an instruction on the theory of duress or necessity, he must proffer evidence of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force"); *id.*, at 416, n. 11 ("Our principal difference with the dissent, therefore, is not as to the *existence* of such a defense but as to the importance of surrender as an element of it" (emphasis added)). Indeed, the Court's comment on the general availability of the necessity defense is completely unnecessary because the Government has made no such suggestion. Cf. Brief for United States 17–18 (narrowly arguing that necessity defense cannot succeed if legislature has

_____

[2] As a result, perhaps the most glaring example of the Court's dicta is its footnote 7, where it opines that "nothing in our analysis, or the statute, suggests that a distinction should be drawn between the prohibitions on manufacturing and distributing and the other prohibitions in the Controlled Substances Act." *Ante*, at 494, n. 7.

already "canvassed the issue" and precluded it for a particular statute (internal quotation marks omitted)). The Court's opinion on this point is pure dictum.

The overbroad language of the Court's opinion is especially unfortunate given the importance of showing respect for the sovereign States that comprise our Federal Union. That respect imposes a duty on federal courts, whenever possible, to avoid or minimize conflict between federal and state law, particularly in situations in which the citizens of a State have chosen to "serve as a laboratory" in the trial of "novel social and economic experiments without risk to the rest of the country." *New State Ice Co.* v. *Liebmann,* 285 U. S. 262, 311 (1932) (Brandeis, J., dissenting). In my view, this is such a case.[3] By passing Proposition 215, California voters have decided that seriously ill patients and their primary caregivers should be exempt from prosecution under state laws for cultivating and possessing marijuana if the patient's physician recommends using the drug for treatment.[4] This case does not call upon the Court to deprive *all* such patients of the benefit of the necessity defense to federal prosecution, when the case itself does not involve *any* such patients.

An additional point deserves emphasis. This case does not require us to rule on the scope of the District Court's discretion to enjoin, or to refuse to enjoin, the possession of marijuana or other potential violations of the Controlled

---

[3] Cf. Feeney, Bush Backs States' Rights on Marijuana: He Opposes Medical Use But Favors Local Control, Dallas Morning News, Oct. 20, 1999, p. 6A, 1999 WL 28018944 (then-Governor Bush supporting state self-determination on medical marijuana use).

[4] Since 1996, six other States—Alaska, Colorado, Maine, Nevada, Oregon, and Washington—have passed medical marijuana initiatives, and Hawaii has enacted a similar measure through its legislature. See Alaska Stat. Ann. §§ 11.71.090, 17.37.010 to 17.37.080 (2000); Colo. Const., Art. XVIII, § 14; Haw. Rev. Stat. §§ 329–121 to 329–128 (Supp. 2000); Me. Rev. Stat. Ann., Tit. 22, § 2383–B(5) (Supp. 2000); Nev. Const., Art. 4, § 38; Ore. Rev. Stat. §§ 475.300 to 475.346 (1999); Wash. Rev. Code §§ 69.51A.005 to 69.51A.902 (1997 and Supp. 2000–2001).

Substances Act by a seriously ill patient for whom the drug may be a necessity. Whether it would be an abuse of discretion for the District Court to refuse to enjoin those sorts of violations, and whether the District Court may consider the availability of the necessity defense for that sort of violator, are questions that should be decided on the authority of cases such as *Hecht Co.* v. *Bowles,* 321 U. S. 321 (1944), and *Weinberger* v. *Romero-Barcelo,* 456 U. S. 305 (1982), and that properly should be left "open" by this case.

I join the Court's judgment of reversal because I agree that a distributor of marijuana does not have a medical necessity defense under the Controlled Substances Act. I do not, however, join the dicta in the Court's opinion.