COUNTY OF SANTA CRUZ, CALIFORNIA; City of Santa Cruz, California; Valerie Corral; Eladio V. Acosta; James Daniel Baehr; Michael Cheslosky; Jennifer Lee Hentz; Dorothy Gibbs; Harold F. Margolin; and Wo/Men's Alliance for Medical Marijuana, Plaintiffs,

v.

John ASHCROFT, Attorney General of the United States; Karen P. Tandy, Administrator of the Drug Enforcement Administration; John P. Walters, Director of the Office of National Drug Control Policy; and 30 Unknown Drug Enforcement Administration Agents, Defendants.

No. C 03–01802 JF.
Docket No. 86.

United States District Court,
N.D. California,
San Jose Division.

April 21, 2004.

Daniel Abrahamson, Judith Appel, Drug Policy Alliance, Office of Legal Affairs, Oakland, CA, John G. Barisone, Atchison, Barisone & Condotti, Santa Cruz, CA, Frank Kennamer, Neha Shah Nissen, Troy Sauro, Lauri A. Schumacher, Bingham, McCutchen LLP, San Francisco, CA, Benjamin Rice, Santa Cruz, CA, Gerald Uelmen, Santa Clara University Law School, Santa Clara, CA, for plaintiffs.

Mark Thomas Quinlivan, U.S. Department of Justice, Washington, DC, for defendants.

### ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION

FOGEL, District Judge.

Plaintiffs seek reconsideration of this Court's decision denying their motion for a preliminary injunction and granting Defendants' motion to dismiss the instant action

with leave to amend.[1] The motion for reconsideration is opposed. The Court has read and considered the papers submitted by the parties and has considered the arguments of counsel presented at the hearing on March 31, 2004. For the reasons set forth below, the motion for reconsideration will be granted.

## I. BACKGROUND

The factual and legal background of the present motion, as set forth in this Court's earlier published opinion, is as follows:

Plaintiff Wo/Men's Alliance for Medical Marijuana ("WAMM") is a collective hospice organization located in Davenport, California that maintains an office in Santa Cruz, California. *See* Declaration of Valerie Corral in Support of Plaintiffs' Motion for Preliminary Injunction ("Corral PI Decl."), ¶ 10. It has approximately 250 member-patients who suffer from HIV or AIDS, multiple sclerosis, glaucoma, epilepsy, various forms of cancer, and other serious illnesses. *See id.* The vast majority of WAMM's members are terminally ill. *See id.* WAMM assists seriously ill and dying patients by providing them with the opportunity to cultivate marijuana plants for their personal medicinal use and to produce marijuana medications collectively used by members to alleviate their pain and suffering. *See id.* ¶¶ 13, 18. Both the cultivation and use of marijuana by WAMM members are carried out only on the recommendation of the patients' respective physicians in compliance with California's medicinal marijuana statute. *See id.* ¶¶ 11, 13. Members of WAMM assist in cultivating marijuana plants to the extent of their physical abilities; they do not purchase, sell, or otherwise distribute marijuana. *See id.* ¶¶ 11, 13, 20. WAMM also provides community support to seriously ill and dying patients through weekly meetings and other forms of outreach. *See id.* ¶ 12. WAMM is supported by voluntary contributions, and its members are not charged for their use of marijuana. *See id.* ¶ 20.

Plaintiff Valerie Corral, the executive director of WAMM, and her husband Michael Corral, her primary caregiver, founded the organization in 1993. *See id.* ¶ 10. The Corrals reside on a farm in Davenport, California, where they have permitted members of WAMM to cultivate marijuana plants for medicinal use. *See id.* Valerie Corral and Plaintiffs Eladio V. Acosta, James Daniel Baehr, Michael Cheslosky, Jennifer Lee Hentz, Dorothy Gibbs, and Harold F. Margolin (collectively "the Patient–Plaintiffs") have used medicinal marijuana on the recommendation of their respective physicians to alleviate pain and suffering caused by their illnesses and to treat certain other symptoms.

The Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801, *et seq.*, provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1).[2] California's medicinal mari-

---

1. *County of Santa Cruz, Cal. v. Ashcroft,* 279 F.Supp.2d 1192 (N.D.Cal.2003).

2. The CSA includes extensive and specific Congressional declarations and findings, including declarations as to the effect of intrastate activities involving controlled substances on interstate commerce:

(1) Many of the drugs included within this subchapter have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people.
(2) The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.
(3) A major portion of the traffic in controlled substances flows through interstate

juana statute, the Compassionate Use Act of 1996, was enacted by California voters on November 5, 1996, when they passed Proposition 215. *See* Cal. Health & Safety Code § 11362.5. The statute creates an exemption from state laws that prohibit the cultivation and use of marijuana: it permits patients and their primary caregivers to possess and cultivate marijuana for personal medicinal use upon a physician's recommendation or approval. *Id.* § 11362.5(d). Additionally, the California legislature has enacted a provision creating exemptions for qualified patients and their designated primary caregivers "who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes." *Id.* § 11362.775. There is no dispute that the activities of WAMM and the Patient–Plaintiffs, each of whose primary caregiver also is a WAMM member, are legal under the statute.

Prior to passage of Proposition 215, Plaintiff County of Santa Cruz ("the County") had adopted an ordinance directing County officials to use their authority to support the availability of marijuana for medicinal use. *See* Santa Cruz County Code Ch. 7.122.020–7.1222.060. Following enactment of the Compassionate Use Act of 1996, Plaintiff City of Santa Cruz ("the City") enacted additional legislation to facilitate implementation of the statute. *See* Santa Cruz Municipal Code Ch. 6.90.010, *et seq.* Among other things, the City's medicinal marijuana ordinance authorizes the City to deputize individuals and organizations as medicinal marijuana providers to assist the City in implementing the statute. *Id.* Ch. 6.90.040(1).

On September 5, 2002, between twenty and thirty armed agents led by officers of the federal Drug Enforcement Administration ("DEA") arrived at the Corrals' property to execute a search warrant. *See* Corral PI Decl., ¶ 27. The DEA agents forcibly entered the premises, pointed loaded firearms at the Corrals, forced them to the ground, and handcuffed them. *See id.* The Corrals subsequently were transported to the federal courthouse in San Jose, where they were released without being charged. *See id.* ¶¶ 27, 28. DEA agents remained on the premises for eight hours, seizing 167 marijuana plants, many of the WAMM members' weekly allotments of medicinal marijuana, various documents and records, and other items. *See id.* ¶ 28.

and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because-
(A) after manufacture, many controlled substances are transported in interstate commerce,
(B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and
(C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.
(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.
(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.
(7) The United States is a party to the Single Convention on Narcotic Drugs, 1961, and other international conventions designed to establish effective control over international and domestic traffic in controlled substances.
21 U.S.C. § 801(1)-(7).

Less than two weeks after the DEA's September 5, 2002 raid, the County's Board of Supervisors adopted a resolution condemning the raid and urging the federal government not to indict the Corrals for their activities. *See* Declaration of Ellen Pirie ... in Support of Plaintiffs' Motion for Preliminary Injunction ("Pirie Decl."), Ex. B. On September 17, 2002, the City permitted WAMM members to receive their weekly allotments of medicinal marijuana at the Santa Cruz City Hall. *See* Corral PI Decl., ¶ 33; Declaration of Emily Reilly ... in Support of Plaintiffs' Motion for Preliminary Injunction ("Reilly Decl."), ¶ 5. The City Council subsequently adopted a resolution deputizing WAMM and the Corrals to function as City-authorized medicinal marijuana providers pursuant to the City's medicinal marijuana ordinance. *See* Reilly Decl., Ex. A.

On September 24, 2002, WAMM and the Corrals filed a related action against the federal government in this Court seeking return of the marijuana plants and other property seized in the September 5, 2002 raid pursuant to Federal Rule of Criminal Procedure 41(e). *See Wo/Men's Alliance for Medical Marijuana, et al. v. United States,* No. 02–MC–7012 JF (N.D. Cal. filed Sept. 24, 2002) ("the related action").[3] The movants argued that their conduct did not affect interstate commerce and that application of the CSA to such conduct thus constituted an unlawful exercise of Congressional powers under the Commerce Clause. This Court concluded, however, that disposition of the movants' motion was controlled by Ninth Circuit precedent that precluded the relief sought. Accordingly, the Court denied the motion for return of property by order issued December 3, 2002. *See Wo/Men's Alliance*

*for Med. Marijuana v. United States,* No. 02–MC–7012 JF, 2002 WL 32174210, 2002 U.S. Dist. LEXIS 26389 (N.D.Cal. Dec.3, 2002). That decision has been appealed to the United States Court of Appeals for the Ninth Circuit, and oral argument took place in September 2003.

On April 23, 2003, Plaintiffs filed the instant action against Defendants John Ashcroft, Attorney General of the United States; Karen P. Tandy, Administrator of the DEA[4]; John P. Walters, Director of the Office of National Drug Control Policy; and 30 Unknown DEA Agents, seeking to enjoin alleged violations of their constitutional rights. They assert the following claims: (1) deprivation of fundamental rights under the Fifth and Ninth Amendments to alleviate pain and suffering and to control the circumstances of one's own death; (2) deprivation of the fundamental right to follow the recommendations of one's physician; (3) unlawful exercise of Congressional powers under the Commerce Clause; and (4) violation of the Tenth Amendment. Plaintiffs also seek a declaration that WAMM and Valerie Corral are immune from civil and criminal liability under the CSA for their activities, as well as damages for Defendants' alleged violations of their constitutional rights. Only the third claim is at issue in the present motion.

## II. LEGAL STANDARD

### A. Motion for a Preliminary Injunction

The primary purpose of a preliminary injunction is to preserve the status quo pending a trial on the merits. *Los Angeles Memorial Coliseum Comm'n v.*

---

**3.** The City and County are not parties to the related action.

**4.** Pursuant to Federal Rule of Civil Procedure 25(d)(1), Karen P. Tandy, Administrator of the

DEA, was automatically substituted as a party for her predecessors, John B. Brown III and William B. Simpkins, who served as Acting Administrators of the DEA.

*Nat'l Football League,* 634 F.2d 1197, 1200 (9th Cir.1980). A party seeking a preliminary injunction must show either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips in its favor. *Roe v. Anderson,* 134 F.3d 1400, 1401–02 (9th Cir.1998), *aff'd, Saenz v. Roe,* 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). These formulations represent "two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *United States v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 174 (9th Cir.1987). However, "even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits." *Johnson v. Cal. State Bd. of Accountancy,* 72 F.3d 1427, 1430 (9th Cir.1995) (citing *Martin v. Int'l Olympic Comm.,* 740 F.2d 670, 675 (9th Cir.1984)). Depending on the nature of the case, the Court also may consider whether the public interest will be advanced by granting the requested relief. *Id.; Westlands Water Dist. v. Natural Resources Defense Council,* 43 F.3d 457, 459 (9th Cir.1994).

**B. Motion to Dismiss**

 A complaint may be dismissed as a matter of law for only two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984) (citing 2A J. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.08 at 2271 (2d ed.1982)). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Argabright v. United States,* 35 F.3d 472, 474 (9th Cir.1994). Motions to dismiss generally are viewed with disfavor under this liberal standard and are granted rarely. *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997).

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Argabright,* 35 F.3d at 474. However, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994). The Court's review is limited to the face of the complaint, documents referenced by the complaint, and matters of which the court may take judicial notice. *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1483 (9th Cir. 1991); *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 n. 4 (9th Cir.1996).

**C. Motion for Reconsideration**

 After a court enters an order, it may set aside or change its order pursuant to either its own local rules or Rule 60 of the Federal Rules of Civil Procedure. *Ground v. Sullivan,* 785 F.Supp. 1407, 1411 n. 3 (S.D.Cal.1992). Granting relief under Rule 60 is a matter within the discretion of the district court. *Thompson v. Housing Auth. of Los Angeles,* 782 F.2d 829, 832 (9th Cir.1986). Plaintiffs ask for reconsideration of this Court's August 28, 2003 Order ("the Order"), pursuant to Rule 60(b)(5), which permits relief from an order if "a prior judgment upon which it is based has been reversed or otherwise vacated." Additionally, Civil Local Rule 7–9(b)(2), permits reconsideration if the mov-

ing party specifically shows "the emergence of new material facts or a change of law occurring after the time of such order."

## III. DISCUSSION

### A. Plaintiffs' Motion for Preliminary Injunction

#### 1. Likelihood of Success on the Merits

■ Plaintiffs' seek reconsideration of this Court's determination concerning their likelihood of success on the merits in light of new Ninth Circuit authority supporting their arguments under the Commerce Clause, U.S. CONST. art. I, § 8, cl. 3. The Court previously concluded that Ninth Circuit decisions in a number of earlier cases required it to hold that the CSA as applied to the facts of this case was constitutional and consistent with the Commerce Clause. *See, e.g., United States v. Visman,* 919 F.2d 1390 (9th Cir.1990). However, subsequent to the issuance of the Order, the Ninth Circuit for the first time expressed its view as to whether the CSA constitutionally applies to the personal, noncommercial use of marijuana for medicinal purposes.[5] *Raich v. Ashcroft,* 352 F.3d 1222 (9th Cir., 2003).

By a two to one vote, the court determined that such activities do not involve instrumentalities or channels of interstate commerce and it therefore needed to decide only whether they *substantially affected* interstate commerce. *See United States v. Lopez,* 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Pursuant to the analytical framework articulated by the Supreme Court in *United States v. Morrison,* 529 U.S. 598, 610–12,

120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), the court considered the following questions: (1) Does the statute in question regulate commerce or any sort of economic enterprise?; (2) Does the statute contain any express jurisdictional element which might limit its reach to a discrete set of cases?; (3) Does the statute or its legislative history contain express congressional findings that the regulated activity affects interstate commerce?; and (4) Is the link between the regulated activity and a substantial affect on interstate commerce attenuated? *See id.*

To answer the first question, a court first must define the activities at issue based on the particular facts of the case. In *Raich,* the majority defined the class of activities at issue as "intrastate noncommercial cultivation, possession, and use of marijuana for personal medicinal purposes on the advice of a physician and in accordance with state law" and not "drug *trafficking.*" *Raich,* 352 F.3d at 1228–29. The class of activities did "not involve sale, exchange, or distribution." *Id.* at 1229. The court then considered whether this defined class of activities constituted commerce or any sort of economic enterprise. It focused particularly on the fact that the purpose of the medicinal marijuana was personal use and not economic or commercial use: the users did "not seek to exchange it or to acquire marijuana from others in a market." *Id.* at 1231. In contrast, the court characterized the CSA as "part of a wider regulatory scheme criminalizing interstate and intrastate *commerce* in drugs." *Id.* at 1230.[6] It thus concluded that the CSA, as applied to the "cultivation, possession, and use of mari-

---

**5.** This issue was expressly reserved by the Supreme Court in *United States v. Oakland Cannabis Buyers' Coop.,* 532 U.S. 483, 495 n. 7, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001).

**6.** The court also noted that "none of the cases in which the Ninth Circuit has upheld the CSA on Commerce Clause grounds involves the use, possession, or cultivation of marijuana for medical purposes." *Raich,* 352 F.3d at 1227.

juana for medicinal purposes and not for exchange or distribution," did not regulate commerce or any sort of economic enterprise. *Id.* at 1229.

Addressing the second *Morrison* factor, the court found that there is no jurisdictional element limiting the CSA to a discrete set of cases wherein interstate commerce is substantially affected. *Id.* at 1231. It then concluded that the third factor weighed in favor of finding the CSA constitutional because there were at least some Congressional findings indicating that intrastate possession of controlled substances impacted interstate commerce. *Id.* at 1232. However, the court also noted that Congress made no findings specifically addressing the class of activities at issue and that the findings that were made were limited to the effects of intrastate activity on interstate commerce, that is, the trafficking or distribution of controlled substances. *Id.* at 1231–32. "The findings are not specific to marijuana, much less intrastate medicinal use of marijuana that is not bought or sold and the use of which is based on the recommendation of a physician." *Id.* at 1232. The court also noted that this factor does not weigh as heavily in the calculation as do the first and fourth factors. *Id.*

Finally, the court concluded that the link between the regulated activity and the substantial effect on interstate commerce is attenuated. Although "the intrastate cultivation, possession and use of medical marijuana on the recommendation of a physician could, at the margins, have an effect on interstate commerce by reducing the demand for marijuana that is trafficked interstate[,] . . . [i]t is far from clear that such an effect would be substantial." *Id.* at 1233. Weighing the four factors, the court held that the CSA, as applied to the facts of the case, is likely unconstitutional. The court noted that it is particularly important to ensure that Congress's use of its Commerce Clause power is appropriate in the criminal law context. *Id.* at 1234. Unless and until it is overruled,[7] *Raich* is controlling authority in this circuit and expressly represents a change in the law applicable to this case.[8]

Defendants nonetheless attempt to distinguish this case from *Raich* in two respects. First, they assert that while the Plaintiffs in *Raich* grew and cultivated their own plants, WAMM—a collective— grows and cultivates plants and then *distributes* medicinal marijuana to end users. Second, they contend that because it collects an administrative fee from members who can afford and choose to pay it, WAMM is engaged in a commercial activity. Plaintiffs dispute the factual basis of Defendants' argument, asserting that all members of WAMM are users who mutually assist each other in alleviating pain. Corral PI Decl., ¶ 12; Declaration of Valerie Corral, submitted in the related action, ("Corral WAMM Decl."), ¶ 1. "Patients assist in caring for and harvesting the plants to the extent of their physical ability." Corral WAMM Decl., ¶ 2. Plaintiffs also assert that "[p]atients are not charged for the marijuana. . . . W.A.M.M. is supported by voluntary contributions from patients and others, but the availabil-

---

7. Defendants' counsel has represented that Defendants will file a petition for writ of certiorari in *Raich* shortly. Letter from Mark T. Quinlivan, dated April 6, 2004. Neither the filing nor a grant of a petition for certiorari affects the present motion. Granting or denying a petition for certiorari by itself does not have precedential value, *see, e.g., Barahona–Gomez v. Reno,* 167 F.3d 1228, 1234 n. 6

(9th Cir.1999), and Defendants apparently have not sought a stay from either the Supreme Court, *see Mori v. Int'l Bhd. of Boilermakers,* 454 U.S. 1301, 102 S.Ct. 1046, 70 L.Ed.2d 370 (1981); SUP. CT. R. 23, or the Ninth Circuit, *see* 28 U.S.C. § 2101(f); FED. R. APP. P. 41(d)(2).

8. *Raich,* 352 F.3d at 1231 n. 5.

ity of medicinal marijuana for a patient is not dependent upon or related to their financial contributions." *Id.; see also* Corral PI Decl., ¶ 13.

The weight of the evidence in the record supports Plaintiffs' position. First, the Court notes that it already has made explicit findings supporting Plaintiffs' view of the appropriate classification. For example, it has found that "[m]embers of WAMM assist in cultivating marijuana plants to the extent of their physical abilities; they do not purchase, sell, or otherwise distribute marijuana," *County of Santa Cruz, Cal. v. Ashcroft,* 279 F.Supp.2d 1192, 1196 (N.D.Cal.2003), and "WAMM is supported by voluntary contributions, and its members are not charged for their use of marijuana," *id.* Second, while it is true that the plaintiffs in *Raich* were individuals, rather than a collective, the lead plaintiff in that case—Angel McClary Raich—was assisted by others in growing her plants. Thus, the fact that some WAMM members require assistance—because they may be physically unable to grow, cultivate, or process the plants because of the advanced stage of their illness—is immaterial to the present legal analysis. The only difference between this case and *Raich* is the existence of a collective. In both cases, whether the use of medicinal marijuana is facilitated by a collective or by friends, such use remains limited to personal *noncommercial* medical purposes. California state law also supports this characterization of Plaintiffs' activities. It provides immunity to "[q]ualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or coop-

eratively to cultivate marijuana for medical purposes." Cal. Health & Safety Code § 11362.775.

Based on the present record, the Court cannot conclude that the financial contributions that some members make to assist in WAMM's administrative costs convert personal use into commercial use. It is undisputed that the medicinal marijuana is not grown or cultivated for sale or profit but rather is grown specifically for use by collective members who use it on the advice of their physicians. Accordingly, as in *Raich,* the activity at issue in the present case is best defined as "intrastate noncommercial cultivation, possession, and use of marijuana for personal medical purposes on the advice of a physician and in accordance with state law." On the particular facts of this case, it is immaterial whether or not such cultivation, possession, and use is performed wholly by a single person or with the assistance of others, such as members of a collective, as long as such services are not performed for profit.

*Raich* thus compels this Court to revise its analysis of the first factor of the *Morrison* test.[9] In light of *Raich,* the first factor, which is "ordinarily the most important" one, *United States v. McCoy,* 323 F.3d 1114, 1129 (9th Cir.2003), now weighs in favor of Plaintiffs. The Court already has found that the second and fourth factors also weigh in favor of Plaintiffs. Only the third factor, which according to the *Raich* majority should be taken "with a grain of salt," [10] *Raich,* 352 F.3d at 1232, weighs in favor of Defendants. Accordingly, the Court concludes that, at least in the Ninth Circuit, the CSA does not extend, constitutionally pursuant to the Commerce Clause, to the activities at issue in the present action.

---

**9.** *See also, Raich,* 352 F.3d at 1231 n. 5.

**10.** While the Court does not necessarily agree with this characterization of the importance

of Congressional findings, the point is inconsequential in light of the strength of Plaintiffs' showing as to the other *Morrison* factors.

## 2. Irreparable Injury

This Court has determined in both the present action and the related action that Plaintiffs have made a sufficient showing that they face a significant threat of irreparable injury because of Defendants' actions. *See County of Santa Cruz, Cal.,* 279 F.Supp.2d at 1199–1200; *Wo/Men's Alliance for Med. Marijuana,* 2002 WL 32174210 at *2, 2002 U.S. Dist. LEXIS 26389 at *6. In deference to the interests of the executive and legislative branches, the Court has inquired of Defendants through counsel whether they would agree voluntarily to refrain from taking action against Plaintiffs while the Supreme Court considers the government's petition for writ of certiorari in *Raich.* Defendants have responded that they "cannot agree, formally or informally, to stay enforcement of the [CSA] as to the plaintiffs, or to anyone else." Letter from Mark T. Quinlivan, dated April 6, 2004. In the present legal and factual context, a preliminary injunction thus is necessary to prevent irreparable injury to Plaintiffs.

## 3. Conclusion

Absent intervention by the Supreme Court, the change in the law of this circuit requires this Court to reconsider its decision denying Plaintiffs' motion for a preliminary injunction. Plaintiffs have demonstrated irreparable injury and a likelihood of success with respect to their argument that, on the facts of this case and the controlling case law in this circuit, the CSA as applied to Plaintiffs is an unconstitutional exercise of Congress's Commerce Clause power.

## B. Defendants' Motion to Dismiss

The Court granted Defendants' motion to dismiss Claims 1 and 2 of Plaintiffs' complaint (for injunctive and declaratory relief for deprivation of fundamental rights under the Fifth and Ninth Amendments), Claim 3 (for injunctive and declaratory relief based upon unlawful exercise of Congressional powers under the Commerce Clause), Claim 4 (for injunctive and declaratory relief based upon violation of the Tenth Amendment), and Claim 5 (for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Plaintiffs' actions are protected from civil or criminal liability under the CSA by 21 U.S.C. § 885(d)). For the reasons discussed above, the Court must reconsider its dismissal of Plaintiffs' claims based upon the unconstitutional exercise of Congress's Commerce Clause power. Accordingly, Defendants' motion to dismiss Claim 3 will be denied. For the reasons previously stated by the Court, Claims 1, 2, 4, and 5 will be dismissed with leave to amend.

## ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that:

(1) Plaintiffs' motion for reconsideration is GRANTED;

(2) Plaintiffs' motion for a preliminary injunction is GRANTED;

(3) Defendants' motion to dismiss is GRANTED with leave to amend as to Plaintiffs' first, second, fourth, and fifth causes of action and DENIED as to Plaintiffs' third cause of action;

(4) Any amended complaint shall be filed within ninety (90) days of the date of this Order; and

(5) Counsel for Plaintiffs are directed to prepare a proposed form of order granting the motion for preliminary injunction; no bond shall be required.