Mr. Will Taylor, Spokesperson Cannabis-Hemp Study Advocates
714 North Walnut Street Little Rock, Arkansas 72205
Dear Mr. Taylor:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed initiated act:
 Popular Name THE ARKANSAS CANNABIS AND HEMP STUDY ACT
 Ballot Title CANNABIS ("MARIJUANA") AND HEMP ARE PROHIBITED SUBSTANCES UNDER FEDERAL AND ARKANSAS LAW; THIS ACT, WHICH DOES NOT LEGALIZE CANNABIS OR HEMP, AUTHORIZES A STATE-WIDE, SCIENTIFIC AND ACADEMIC, LONG-TERM, AND SELF-FINANCING STUDY TO COMPREHENSIVELY RESEARCH HEMP AGRICULTURE, PROCESSING AND INDUSTRIAL UTILITY AND DEMONSTRATE THE ECONOMIC EFFECT OF AN ARKANSAS HEMP INDUSTRY; AND TO RESEARCH CANNABIS PHARMACOLOGY AND MEDICAL APPLICATIONS AND EVALUATE THE ECONOMIC, MEDICAL, AND SOCIETAL EFFECTS OF REGULATED PRODUCTION AND USE OF CANNABIS FOR *Page 2 
MEDICAL/THERAPEUTIC AND NON-MEDICAL APPLICATIONS; THE STUDY INCLUDES TRIALS AND TESTS WHOSE SUBJECTS ARE REGISTERED STUDY PARTICIPANTS; ALL COMPETENT, NON-INCARCERATED RESIDENTS (AND TOURISTS/VISITORS, WHILE IN ARKANSAS) AGED 21 AND OLDER ARE ELIGIBLE TO REGISTER TO PARTICIPATE IN THE STUDY.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neithercertification nor rejection of a popular name and ballot title reflectsmy view of the merits of the proposal. This Office has beengiven no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law." Kurrus v. Priest,342 Ark. 434, 29 S.W.3d 669 (2000); Donovan v. Priest,326 Ark. 353, 931 S.W.2d (1996); and Plugge v. McCuen,310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that thepopular name and ballot title honestly, intelligibly, and fairly setforth the purpose of the proposed amendment or act. SeeArkansas Women's Political Caucus v. Riviere,282 Ark. 463, 466, 677 S.W.2d 846 (1984). *Page 3 
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant,259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen,318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen,303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v. McCuen,296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen,310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v.McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the *Page 4 
effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. As an initial matter, I must note that your proposed measure is ambiguous in that it consistently refers to the organizations you propose establishing in the present tense, as though they already exist and are in operation.
 2. Your proposed measure is further ambiguous in that it characterizes itself as "a comprehensive research project . . . for regulating hemp and cannabis production and use in Arkansas" — an undertaking you characterize in your proposed ballot title as "not legaliz[ing] cannabis or hemp." In fact, however, the proposed measure purports to legalize the use of marijuana for both medical and personal use by what you characterize as "study participants" in the "research project."
 3. Your definition of "study participant" is "a user — medical or non-medical, or a grower-for-sale." This definition suggests that a "participant" is either a producer or a consumer of marijuana or hemp who is duly registered with the proposed Arkansas Cannabis and Hemp Study Authority ("CHA") in the manner set forth in your measure. However, your proposed measure further refers to prescribing physicians as "participants" subject to registration with the CHA. It is unclear in your proposed measure whether both a prescribing physician and his patient are obliged to register with the CHA before the physician will be legally entitled to prescribe medicinal marijuana under Arkansas law.
 4. Your proposed measure fails to acknowledge that the distribution of marijuana is illegal as a matter of preemptive federal law. As *Page 5 
this office noted in addressing another proposed measure seeking the legalization of marijuana for medical purposes:
 [Y]our proposed measure cannot completely legalize marijuana in Arkansas for medical purposes because the drug remains illegal under federal law, 21 U.S.C. § 801 et seq. (the Controlled Substances Act). Gonzales v. Raich, 545 U.S. 1 (2005); United States v. Oakland Cannabis Buyers' Cooperative, 532 U.S. 483 (2001). The upshot of Raich is that the federal government and its agencies have the authority to enforce the federal drug laws, even in a state that has sanctioned the use of marijuana for medicinal purposes. See Note, California Takes a Hit: The Supreme Court Upholds Congressional Authority over the State-Approved Use of Medicinal Marijuana. Gonzales v. Raich, 545 U.S. 1 (2005), 28 UALR L. Rev. 545, 580 (2006) ("The Raich decision makes it clear that federal authorities can prosecute patients possessing and consuming marijuana for medicinal purposes, irrespective of a state statute authorizing the patients use.")[1]
 Disclosure of this potential problem might well give a voter serious ground for reflection.
 5. You recite as authority for your proposed measure A.C.A. § 5-64-508(b), which authorizes only "research on misuse and abuse of controlled substances." In its focus on "misuse and abuse," *Page 6 
this provision is consistent with the provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq. Your proposed measure does not address "misuse and abuse" of marijuana, which is currently a prohibited drug; rather, it authorizes its use. It is consequently ambiguous, if not downright misleading, to suggest that current state and federal legislation "have provisions for research and for individuals involved in research" of the sort contemplated in your proposed measure. The "research" authorized under current law is aimed at preventing the use of a banned substance that your measure would authorize. Furthermore, it is unclear why you need to invoke a statute as authority for voters to adopt an initiated act.
 6. Your proposed measure contains a provision that "this act's administrators" will cooperate with the "administrators" of any other "similar act" to "eliminate redundancies and conflicts and to further the objectives of both Acts." It is unclear who you are referring to when you use the term "administrators." Your measure contemplates at least three organizations — the CHA, which would itself have three subdivisions, an Interim Advisory Panel (the "IAP") and CHA "County Cooperatives." It is unclear which of these entities would contain the "administrators" referenced in the above quoted passage. You further appear to contemplate the amendment of your proposed act, without voter approval, by a 75% supermajority vote of "IAP members or CHA Board members." It is unclear which of these two entities might effect any such amendment. It is further unclear what relationship these entities bear to each other and when the "interim" panel ceases to exist. I am consequently unable to summarize these provisions in a ballot title.
 7. Your proposed measure apparently anticipates that the "study's" operation will be initiated by action undertaken by the IAP. Although your measure anticipates that the IAP will obtain operating revenues from "county co-ops," the latter apparently will not exist initially, leaving it unclear how the IAP will fund *Page 7 
its initial operations. I am consequently unable to summarize this provision in a ballot title.
 8. Your proposed measure is further confusing with respect to the "study implementation." As drafted, the measure provides that in Phase I of the "study," county co-ops will "register and begin operation." However, it is difficult to conceive how these operations could commence in Phase I given that the election of county co-op boards of directors is not scheduled to occur until Phase II.
 9. Your proposed measure provides that in Phase II, "[s]tudy participants in each county elect a County Co-op Board of Directors." As noted above, the designation "study participants" is far from clear and your section on "study implementation" fails to specify what entity in Phase I has determined who qualify as "study participants." I consequently cannot summarize this provision in a ballot title.
 10. Your proposed measure is further confusing regarding the organizational structure of the CHA. You suggest that in Phase III of the "study," the county co-op boards of directors will elect the CHA board. However, elsewhere in your proposed measure, you describe an entirely different procedure for selecting board members for the three divisions that would comprise the CHA. It is unclear whether your measure anticipates that there would in fact be four boards, rendering it impossible for me to summarize this provision in a ballot title.
 11. Your proposed measure is further unclear regarding the degree of information disclosure that might attend what you term "physician participation." Your proposed measure anticipates disclosure through a "public information network" of a participant's identity and information regarding "in which categories he or she participates." At the same time, you represent that the "study" will observe "[t]he confidentiality rules of the Insurance Portability and Accountability Act of 1966" *Page 8 
("HIPAA"), 42 U.S.C. § 1320d et seq. The confidentiality provisions of HIPAA constitute preemptive federal law, and I am unable from your proposed measure to summarize whether this law would in fact be observed.
 12. In the section of your proposed measure designated "Cannabis Production," you represent that "[t]he County Co-ops perform all cannabis distribution and dispensing to individual participants." However, in the section designated "Donating Medical Cannabis," you expressly acknowledge that participants might be "growing for personal use," leaving unresolved whether your proposed measure might be read as authorizing the cultivation of marijuana for consumption without co-op, HCA or IAP involvement. I am consequently unable to summarize these provisions in a ballot title.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law.See, e.g., Finn v. McCuen,303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v.Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities. *Page 9 
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See
A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Op. Att'y Gen. No 2009-208.
I should note, however, that as a matter of Justice Department policy, the government appears disinclined to pursue criminal prosecutions in cases where an individual has been prescribed marijuana pursuant to a state statute authorizing such treatment. See David W. Ogden, Deputy Attorney General, Memorandum for Selected UnitedStates Attorneys: Investigations and Prosecutions in States Authorizingthe Medical Use of Marijuana (Oct. 19, 2009), available athttp://www.justice.gov/opa/documents/medical-marijuana.pdf. To date, fifteen states and the District of Columbia "have legalized marijuana use for ill patients who have a doctor's recommendation." Tony Pugh, Medical Marijuana Industry Thriving, K.C. Star, Apr. 18, 2011,http://www.kansascity.com/2011/04/18/2807405/medical-marijuana-industry-thriving.html.
 *Page 1