This Opinion Is a
Precedent of the TTAB

Mailed: October 27, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re JJ206, LLC, dba JuJu Joints*

————

Serial Nos. 86474701 & 86236122[1]

————

Shreya B. Ley, Esq.
    for JJ206, LLC.

Lindsey H. Ben, Trademark Examining Attorney, Law Office 108,
    Andrew Lawrence, Managing Attorney (Serial No. 86474701).

Robert J. Struck, Trademark Examining Attorney, Law Office 109,
    Michael Kazazian, Managing Attorney (Serial No. 86236122).

————

Before Ritchie, Lynch, and Larkin,
    Administrative Trademark Judges.

Opinion by Lynch, Administrative Trademark Judge:

---

[1] Because the cases have common questions of fact and of law, and the relevant portions of the records are largely identical, the appeals are hereby consolidated. *See, e.g., In re Anderson*, 101 USPQ2d 1912, 1915 (TTAB 2012) (The Board *sua sponte* consolidated two appeals). The TTABVUE citations herein include in parentheses the serial number of the case to which the citation pertains.

JJ206, LLC ("Applicant") seeks registration on the Principal Register of the following marks:

> POWERED BY JUJU, in standard characters, for "smokeless cannabis vaporizing apparatus, namely, oral vaporizers for smoking purposes; vaporizing cannabis delivery device, namely, oral vaporizers for smoking purposes" in International Class 34;[2] and

> JUJU JOINTS, in standard characters, for "smokeless marijuana or cannabis vaporizer apparatus, namely, oral vaporizers for smokers; vaporizing marijuana or cannabis delivery device, namely, oral vaporizers for smoking purposes" in International Class 34.[3]

The Examining Attorney has refused registration of the POWERED BY JUJU intent-to-use application based upon the absence of a bona fide intent to use the mark in lawful commerce under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1127. Similarly, the Examining Attorney has refused registration of the JUJU JOINTS use-based application based upon lack of lawful use of the mark in commerce under Sections 1 and 45 the Trademark Act, 15 U.S.C. §§ 1051, 1127. *See* Trademark Manual of Examining Procedure (TMEP) § 907 (April 2016) ("For applications based on Trademark Act Section 1(b), 44, or 66(a), if the record indicates that the mark or the identified goods or services are unlawful, actual lawful use in commerce is not possible. Thus, a refusal under Trademark Act Sections 1 and 45 is also appropriate

---

[2] Application Serial No. 86474701 was filed December 8, 2014 based upon an intent to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).

[3] Application Serial No. 86236122 was filed March 28, 2014 based upon use in commerce under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a). The term "JOINTS" is disclaimed.

for these non-use-based applications, because the applicant does not have a bona fide intent to lawfully use the mark in commerce."). In both cases, Applicant appealed and requested reconsideration, which each Examining Attorney denied. We affirm the refusals to register.

"We have consistently held that, to qualify for a federal service mark [or trademark] registration, the use of a mark in commerce must be 'lawful.'" *In re Brown*, 119 USPQ2d 1350, 1351 (TTAB 2016) (affirming the refusal for lack of lawful use of a mark for the retail sale of herbs that included marijuana) (citations omitted); *see also Gray v. Daffy Dan's Bargaintown,* 823 F.2d 522, 3 USPQ2d 1306, 1308 (Fed. Cir. 1987) ("[a] valid application cannot be filed at all for registration of a mark without 'lawful use in commerce. . . .'"). Therefore, "any goods . . . for which the mark is used must not be illegal under federal law." *Brown*, 119 USPQ2d at 1351.

It logically follows that if the goods on which a mark is intended to be used are unlawful, there can be no bona fide intent to use the mark in lawful commerce. In *John W. Carson Found. v. Toilets.com, Inc.*, 94 USPQ2d 1942 (TTAB 2010), the applicant previously had been permanently enjoined by a court against using the applied-for mark because it violated the right of publicity of the opposer's predecessor in interest. The Board therefore ruled that the applicant lacked the necessary bona fide intent to use the mark, stating, "[b]ecause the permanent injunction enjoins applicant from making the use required to obtain its federal trademark registration, as a matter of law, applicant cannot make lawful use of its mark in commerce. Therefore, it is a legal impossibility for applicant to have a bona fide intent to use its

mark in commerce." *Id.* at 1947-48. Similarly, where the identified goods are illegal under the federal Controlled Substances Act (CSA), the applicant cannot use its mark in lawful commerce, and "it is a legal impossibility" for the applicant to have the requisite bona fide intent to use the mark.

In both applications in this case, Applicant has explicitly identified its goods as vaporizing devices for cannabis[4] or marijuana. The CSA makes it unlawful to sell, offer for sale, or use any facility of interstate commerce to transport drug paraphernalia, defined as "any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under [the CSA]." 21 U.S.C. § 863; *see also Brown*, 119 USPQ2d at 1352 n.10. The CSA identifies marijuana as a controlled substance that is unlawful to possess. 21 U.S.C. §§ 812(a) & (c) (identifying "Marihuana," by its alternate spelling, as a controlled substance); 841, 844 (placing prohibitions on the possession of controlled substances). The CSA defines marijuana (or "marihuana") as "all parts of the plant Cannabis sativa L., whether growing or not; . . . the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin," but for certain exceptions not relevant

---

[4] "Cannabis" refers to "any of the preparations (as marijuana or hashish) or chemicals (as THC) that are derived from the hemp and are psychoactive." (www.merriam-webster.com). The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed format or regular fixed editions. *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006).

to Applicant's goods.[5] 21 U.S.C. § 802(16). Based on this definition and the evidence of record, we find that Applicant's references to "cannabis" in its identifications are to marijuana, as defined in the CSA. Thus, equipment primarily intended or designed for use in ingesting, inhaling, or otherwise introducing cannabis or marijuana into the human body constitutes unlawful drug paraphernalia under the CSA.

Therefore, we find that Applicant's identified goods fall within the definition of illegal drug paraphernalia under the CSA. The identifications of goods make clear that Applicant's devices are designed and intended for the introduction of marijuana or cannabis into the human body. Applicant has not disputed this fact in either case, and has acknowledged that its goods are "marijuana-related"[6] and "optimized" for cannabis.[7] In its Briefs, Applicant contends that its goods "should be considered in the same league as other oral vaporizing apparatuses, like e-cigarettes,"[8] but the identifications of goods and Applicant's own evidence regarding its goods make clear that its devices are in a different "league" that violates the CSA.

---

[5] Footnote 12, *infra*, includes a discussion of some exceptions that may apply to the goods and services in third-party registrations submitted by Applicant.

[6] *See, e.g.,* Serial No. 86236122, 4 TTABVUE 17 (Applicant's Request for Reconsideration); Serial No. 86474701, 4 TTABVUE 10 (Applicant's Request for Reconsideration). In addition, Applicant submitted a posting regarding JUJU JOINTS being voted one of the best marijuana products by Seattle Weekly. Serial No. 86236122, 4 TTABVUE 49 (Applicant's Request for Reconsideration).

[7] Serial No. 86236122, 4 TTABVUE 17 (Applicant's Request for Reconsideration); Serial No. 86474701, 4 TTABVUE 10 (Applicant's Request for Reconsideration). Applicant also submitted an article about its business and founder indicating that he is "cashing in on legal marijuana" and that the vaporizers "come[] preloaded with 250 milligrams of cannabis oil." Serial No. 86236122, 4 TTABVUE 30 (Applicant's Request for Reconsideration).

[8] Serial No. 86474701, 7 TTABVUE 5 (Applicant's Brief); Serial No. 86236122, 5 TTABVUE 4 (Applicant's Brief).

Applicant points to a pending third-party application[9] and four third-party registrations[10] for goods or services that Applicant characterizes as "in support of the marijuana industry," and claims that its "goods should be treated no differently."[11] However, each application must be considered on its own record to determine eligibility to register. *In re Cordua Rests., Inc.*, 823 F.3d 594, 118 USPQ2d 1632, 1635 (Fed. Cir. 2016); *see also In re Nett Designs, Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("Even if some prior registrations had some characteristics similar to Nett Designs' application, the PTO's allowance of such prior registrations does not bind the Board or this court."). Regardless, the third-party pending application evidence shows nothing more than that the application was filed with the USPTO. *In re Binion*, 93 USPQ2d 1531, 1535 n.3 (TTAB 2009). Further, there is no

---

[9] Serial No. 86235836 for the mark YE OLDE DOPE SHOP identifies "Retail store services featuring marijuana and related consumer goods."

[10] Registration No. 4315305 for the mark CANNABIS ENERGY DRINK and design identifies "Energy drinks and sports drinks, including performance drinks, not included in other classes, containing cannabis seed extract or mature cannabis stem extract."

Registration No. 4651863 for the mark CCOP identifies "Retail store services featuring hemp based products, namely, edible hemp oil, candies, confectioneries, chocolate, tinctures, beverages, coffee, tea, cosmetics, shampoo, conditioner, salve, and vaporizers; providing consumer product information via the Internet; administration of reduced price program based on qualifying income, namely, administration of a discount program for enabling participants to obtain discounts on goods and services through use of discount membership; providing consumer information on reduced price wellness and health products and services."

Registration No. 4330124 for the mark MJFREEWAY identifies "Computer services, namely, providing on-line non-downloadable web-based computer software for patient documentation and history, inventory control, and inventory management for use among medical marijuana centers, dispensaries, collectives, and patients."

Registration No. 4714986 for the mark MJARDIN PREMIUM CANNABIS and design identifies "Industrial and engineering design services in the field of agriculture" and Consulting in the field of agriculture."

[11] Serial No. 86474701, 7 TTABVUE 5-6 (Applicant's Brief); Serial No. 86236122, 5 TTABVUE 4-5 (Applicant's Brief).

evidence that it ever matured into registration. With respect to the four registrations, given the differences in the goods and services at issue, none of them presents lawfulness issues analogous to those presented by Applicant's applications.[12]

Applicant next argues that because Applicant markets its goods in states that allow for the sale and distribution of marijuana, its current and intended use therefore constitute lawful use in commerce under the Trademark Act. However, this Board recently rejected this position in affirming the refusal to register a mark for the retail sale of herbs that included marijuana, holding that "the fact that the provision of a product or service may be lawful within a state is irrelevant to the question of federal registration when it is unlawful under federal law." *Brown*, 119 USPQ2d at 1351 (footnotes omitted). "Regardless of individual state laws that may provide for legal activities involving marijuana, marijuana and its psychoactive

---

[12] For example, some identified goods are described as "containing cannabis seed extract or mature cannabis stem extract," which likely falls outside the definition of marijuana in the CSA: "The term 'marihuana' … does not include the mature stalks of [the Cannabis sativa L.] plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination." 21 U.S.C. § 802(16).

Similarly, other identified services involve the retail sale of a variety of "hemp based" products, and the Drug Enforcement Administration of the U.S. Department of Justice has clarified that "[a]ny portion of the cannabis plant, or any product made therefrom, or any product that is marketed as a 'hemp' product, that is both excluded from the definition of marijuana and contains no THC--natural or synthetic--(nor any other controlled substance) is not a controlled substance." Exemption From Control of Certain Industrial Products and Materials Derived From the Cannabis Plant, 68 Fed. Reg. 55 (March 21, 2003) (final rule notice).

Other services in the registrations involve providing software and industrial and engineering design services in the field of agriculture. Even where the subject matter of such services involves marijuana, on their face they present no CSA violation and therefore differ markedly from Applicant's drug paraphernalia goods.

component, THC, remain Schedule I controlled substances under federal law and are subject to the CSA's prohibitions. 21 C.F.R. § 1308.11." *Id.* at 1352;[13] *see also* U.S. Const. Art. VI. Cl. 2; *Gonzales v. Raich*, 545 U.S. 1, 27, 29 (2005); *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491 (2001).

Applicant further maintains that because the jurisdictions where it does business "comply with federal directives such as the *Cole Memo*,"[14] its goods should be considered lawful.[15] The *Cole Memo* refers to a U.S. Department of Justice memorandum to United States Attorneys which addressed the enactment of medical marijuana laws in certain states, affirmed the illegality of marijuana under the CSA, and set out federal "enforcement priorities" "to guide the Department's enforcement of the CSA against marijuana-related conduct."[16] The memo urges federal enforcement efforts to focus on goals including preventing distribution of marijuana to minors, preventing violence and firearm use in marijuana-related activities, and

---

[13] *See also* Interpretation of Listing of 'Tetrahydrocannabinols' in Schedule I, 66 Fed. Reg. 51529 (Oct. 9, 2001) ("For the reasons provided herein, the Drug Enforcement Administration (DEA) interprets the Controlled Substances Act (CSA) and DEA regulations to declare any product that contains any amount of tetrahydrocannabinols (THC) to be a schedule I controlled substance, even if such product is made from portions of the cannabis plant that are excluded from the CSA definition of 'marihuana.'"); 4 TTABVUE 24 (Applicant's Request for Reconsideration) (attaching New York Times article on JuJu Joints, which notes that they contain "100 milligrams of THC, twice as much as a traditional joint").

[14] Serial No. 86474701, 7 TTABVUE 6 (Applicant's Brief); Serial No. 86236122, 5 TTABVUE 6 (Applicant's Brief).

[15] Applicant thus raises one of the issues reserved in *In re Brown*, "whether use not lawful under federal law, but not prosecuted by federal authorities, is thereby rendered sufficiently lawful to avoid the unlawful use refusal." *Brown*, 119 USPQ2d at 1351 n.3.

[16] Serial No. 86474701, 4 TTABVUE 12-13 (The Cole Memo, attached to Applicant's Request for Reconsideration); Serial No. 86236122, 4 TTABVUE 50-51 (The Cole Memo, attached to Applicant's Request for Reconsideration).

"[p]reventing the diversion of marijuana from states where it is legal under state law in some form to other states."[17] We reject Applicant's arguments that its use and intended use of the mark are lawful based on the memorandum, as the memorandum does not and cannot override the CSA,[18] and in fact, explicitly underscores that "marijuana is a dangerous drug and that the illegal distribution and sale of marijuana is a serious crime."[19]

Applicant's remaining arguments involve policy issues that are beyond our jurisdiction over issues of trademark registrability and that are, in any event, already settled within the existing statutory framework of, and interplay between, the Trademark Act and the CSA. For example, Applicant contends that refusing trademark protection for marijuana-related goods and services that violate the CSA "creates consumer confusion, allows for dilution of brand and quality, and opens the Applicant up to infringement, which is contrary to the purpose and intent of the [Trademark] Act."[20] Similarly, Applicant claims that its goods should be eligible for registration because there are "accepted medical uses for marijuana," and "the

---

[17] *Id.*

[18] The *Cole Memo* is intended only "as a guide to the exercise of investigative and prosecutorial discretion" and specifically provides that "[n]either the guidance herein nor any state or local law provides a defense to a violation of federal law, including any civil or criminal violation of the CSA." Serial No. 86474701, 4 TTABVUE 15 (Applicant's Request for Reconsideration); Serial No. 86236122, 4 TTABVUE 10 (Applicant's Request for Reconsideration). The *Cole Memo* thus provides no support for the registration of a trademark used on goods whose sale is illegal under federal law. *See generally Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("policy statements, agency manuals, and enforcement guidelines" all "lack the force of law") (citations omitted).

[19] *Id.*

[20] Serial No. 86474701, 7 TTABVUE 7 (Applicant's Brief).

marijuana industry is similar to the alcohol and tobacco industry."[21] This line of reasoning fails to recognize that lawful use of a mark in commerce is a prerequisite to federal registration, *Gray*, 3 USPQ2d at 1308, and that Congress has made the sale of marijuana paraphernalia illegal under federal law. We cannot simply disregard the requirement of lawful use or intended lawful use in commerce under the Trademark Act, or Congress's determination as to what uses are illegal, regardless of the alleged business or consumer consequences of denying registration, and regardless of any analogies between marijuana and other goods that do not violate the CSA.

In conclusion, because Applicant's identified goods constitute illegal drug paraphernalia under the CSA, Applicant's use and intended use of the applied-for marks on these goods is unlawful, and cannot serve as the basis for federal registration.

**Decision**: The refusals to register Applicant's marks under Sections 1 and 45 the Trademark Act, 15 U.S.C. §§ 1051, 1127, are affirmed.

---

[21] *Id.* at 9; Serial No. 86236122, 5 TTABVUE 7 (Applicant's Brief).