UNITED STATES of America

v.

Walter PARKER, Jr., Defendant.

Case No: 97–cr–293–RCL

United States District Court,
District of Columbia.

Signed November 30, 2016

Vivien Jo Cockburn, Diana Harris Epps, U.S. Attorney's Office, Washington, DC, for United States of America.

Mary Manning Petras, Federal Public Defender for the District of Columbia, Washington, DC, Robert Ernest Sanders, Law Offices of Robert Ernest Sanders, Winston Salem, NC, for Walter Parker, Jr.

## ORDER

Royce C. Lamberth, United States District Judge

Without objection, the Court hereby **ADOPTS** the Report and Recommendation of Magistrate Judge Harvey.

Defendant's use of medical marijuana is a violation of federal law. Defendants under federal supervision are prohibited from using medical marijuana even if that use is in compliance with D.C. law or the law of any other state.

The Court agrees, however, that in this case the defendant's use was not a willful violation of his supervised release, and therefore defendant's term of supervised release shall not be revoked.

Moreover, the Court agrees with Magistrate Judge Harvey that the conduct of the defendant and the interests of justice lead to the conclusion in this case that the motion for early termination of supervision as recommended shall be, and it hereby is, **GRANTED.**

It is **SO ORDERED.**

## REPORT AND RECOMMENDATION

### G. MICHAEL HARVEY, UNITED STATES MAGISTRATE JUDGE

This matter was referred to the undersigned for a Report and Recommendation concerning (1) the Probation Office Petition filed on January 27, 2016, seeking clarification as to whether Defendant's use of medical marijuana is a violation of the conditions of his supervised release [Dkts. 70 and 73], and (2) Defendant's Motion to Terminate his Supervised Release filed on April 13, 2016 [Dkt. 72].

### BACKGROUND

Twenty years ago Defendant, Walter Parker, Jr., was arrested for engaging in three drug buys with undercover police officers within a school zone, selling a total of 242.4 grams of cocaine base. During his arrest, a detective shot Defendant three times in the face and shoulder. The detective claimed the shooting was justified because Defendant had run his vehicle into the detective's leg. As a result of the shooting, fragments of two bullets remain lodged in the left side of Defendant's face and head, causing him to suffer from hearing loss in his left ear, blurred vision in his left eye, and nerve damage. He also continues to suffer from severe migraines. The Probation Petition at issue arises from Defendant's use of medical marijuana to address the migraines resulting from the

shooting. The Petition seeks clarification as to whether Defendant's use of medical marijuana in compliance with D.C. law constitutes a violation of the terms of his release in this federal matter.

Prior to his trial in 1997, Defendant expressed a willingness to enter a plea of guilty to the narcotics offenses but not to the charge that he had assaulted the detective with his car. The government refused to accept that offer and elected to take the matter to trial. At his trial, Defendant did not actively contest the narcotics offenses, only the assault with a deadly weapon charge. Tr. 1/5/1998 at 2–3. The jury returned guilty verdicts on the ten narcotics-related offenses. *Id.*[1] However, it found Defendant not guilty of the charge that he assaulted the detective with his car prior to the detective shooting him. *Id.* at 3.

At Defendant's sentencing on January 5, 1998, Judge Harold H. Greene reduced Defendant's (then-mandatory) Guidelines calculation from an offense level 36 to a level 31 for two reasons: (1) a three-level reduction because the Court found that Defendant had accepted responsibility for his offenses of conviction by his willingness to plead guilty to them prior to trial; and (2) a two-level downward departure because the Court found that the police had manipulated the charges by directing Defendant to school zones for purposes of conducting the narcotics transactions. *Id.* at 10–12. Based on Defendant's criminal history category of III, his offense level 31 resulted in a Guidelines range of 135 to 168 months of incarceration. Judge Greene sentenced Defendant to 148 months of incarceration, to be followed by a ten-year period of supervised release, which was the then-mandatory minimum period of supervised release permitted under the Controlled Substances Act ("CSA"). *See id.* at 12, 14–15; 21 U.S.C. §§ 841(b)(1)(A), 860(a) (1994). The ten-year mandatory period of supervised release was dictated by section 860(a) of the CSA, which required a doubling of the five-year mandatory period of supervised release prescribed by section 841(b)(1)(A) because Defendant's crimes occurred in a school zone. *See* 21 U.S.C. § 860(a) (1994).

In November 2007, the United States Sentencing Commission lowered the base offense levels for trafficking crack cocaine by two points, a change which it made retroactive shortly thereafter. *See* U.S.S.G., Supplement to App'x C, Amendments 706, 711 (Nov. 1, 2007). As a result of that amendment, Defendant's Guidelines range was reduced to 108 to 135 months. *See* Unopposed Motion to Reduce Sentence [Dkt. 68] at 2. For that reason, on June 27, 2008, this Court granted the Defendant's unopposed motion to reduce his sentence to a term of 120 months of incarceration, which was the then-mandatory minimum sentence for Defendant's offenses of conviction under the CSA. *Id.*; June 17, 2008 Order Regarding Motion for Sentence Reduction [Dkt. 69]; 21 U.S.C. § 841(b)(1)(A) (2006). The provisions of the Guidelines applicable to Defendant's offenses were reduced again in 2011 and in 2014. As a result of those reductions, a defendant convicted of the same offenses today would face a Guidelines range of between 70 to 87 months of incarceration, as opposed to the range of 135 to 168 months Defendant faced in 1998. *See*

---

1. Specifically, Defendant was found guilty of three counts of Unlawful Use of a Communication Facility, in violation of 21 U.S.C. §§ 846, 843(b); one count of Unlawful Distribution of Fifty Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii); and three counts of Unlawful Distribution of Cocaine Base Within 100 Feet of a School, in violation of 21 U.S.C. § 860(a).

U.S.S.G. § 2D1.1(c) (2015); Def. Mot. for Early Termination [Dkt. 72] at 4.[2]

Since 1998, Congress has also reduced the mandatory minimum applicable to Defendant's offenses of conviction. Presently, the mandatory minimum applicable to the distribution of more than 28 grams, but less than 280 grams, of crack cocaine is 60 months of incarceration, as opposed to 120 months when Defendant was sentenced in 1998 and re-sentenced in 2008. *See* 21 U.S.C. §§ 841(b)(1)(A)(iii), 841(b)(1)(B)(iii). Similarly, Congress has lowered the applicable minimum term of supervised release from ten to eight years for narcotics trafficking offenses in school zones. *See id.* § 841(b)(1)(B)(iii) (requiring imposition of four years of supervised release in addition to any term of imprisonment), 860a (requiring the imposition of at least twice any term of supervised release authorized by section 841 when trafficking offense occurs within one thousand feet of a school).

To his credit, Defendant made good use of his time in prison. He earned his GED and took courses in carpentry, managing finances, and basic computer skills; he also completed a commercial driver's license course. Defendant's ten-year term of supervised release commenced on July 23, 2012. While on release, Defendant has complied with all aspects of his supervision, including paying the special assessment, providing a DNA sample, and obeying the directives of his probation officer. Defendant also participated in Project Empowerment and began job training classes a few months after he left prison. After completing those courses, he found employment collecting trash with the District

of Columbia Department of Public Works. He has maintained that job for nearly four years.

Defendant reports that he has taken prescription medication for many years to treat his migraines resulting from the shooting that occurred at the time of his arrest. Over time, Defendant reports that he became concerned with the adverse side effects of the prescription medications on his stomach and liver. Accordingly, in 2015, Defendant's doctor recommended that he participate in the District of Columbia's medical marijuana program as an alternative to other pain medication. *See* D.C. ST § 7–1671.01 *et seq.* With the recommendation of his doctor, Defendant successfully enrolled in the program, which supplied Defendant with a medical marijuana card. This card permits Defendant to purchase no more than two ounces of marijuana within a thirty-day period from the Takoma Wellness Center Dispensary for use in his home.

As a result of his use of medical marijuana, Defendant tested positive for THC on July 1, 2015. Defendant's probation officer spoke with his doctor, who confirmed that he had recommended that Defendant participate in the D.C. medical marijuana program as an alternative to prescription medication for pain management. His probation officer also confirmed that Defendant was using medical marijuana in compliance with District of Columbia law, a fact which the government does not dispute.

On November 19, 2015, Defendant again tested positive for marijuana on account of his continued use of medical marijuana.

---

**2.** Specifically, Defendant's sale of 242.4 grams of cocaine base would presently equate to an offense level 28. *See* U.S.S.G. § 2D1.1(c)(2015). Subtracting three levels for his acceptance of responsibility (and foregoing the two-level school zone enhancement under section 2D1.2) would reduce his offense level to 25. Based on Defendant's criminal history category III, his offense level of 25 would equate to a Guidelines range of 70 to 87 months. The government did not contest this Guidelines calculation at the July 13, 2016 hearing.

Uncertain as to whether Defendant's use of medical marijuana in compliance with D.C. law constituted a violation of the terms of Defendant's supervised release, the U.S. Probation Office filed a petition on January 27, 2016, seeking clarification from the Court. Following a status hearing on March 30, 2016, the undersigned ordered the parties to brief the issue. On July 13, 2016, the undersigned heard oral argument. Prior to the hearing, the Probation Office said it would defer to the Court on the resolution of the issue and made no recommendation with respect to revocation.

In his briefing, Defendant did not identify any federal authority upholding the use of state-sanctioned medical marijuana by a federal supervisee. Rather, Defendant contends that, regardless of the legality of his use of medical marijuana under federal law, a provision in the federal budget prohibits the government from seeking revocation of his supervised release based on conduct which is compliant with D.C. medical marijuana laws. Def. Mem. Regarding Medical Marijuana [Dkt. 81] at 6. According to Defendant, the operative provision of the federal budget prohibits both the government's opposition in this matter and Defendant's incarceration by the Bureau of Prisons were the Court to revoke his supervised release. *Id.* at 6–7.

For its part, the government maintains that Defendant's use of medical marijuana is a violation of federal law, and that the appropriations provision relied on by Defendant does not preclude the government from seeking revocation. Gov't Reply Regarding Revocation of Supervised Release [Dkt. 85] at 1. The government agrees with Defendant, however, that the Court should not revoke Defendant's supervised release in "light of the circumstances of this case." *Id.* The government clarified at the hearing that it was not announcing a general policy of forbearance regarding the use of medical marijuana by federal supervisees. Rather, going forward, it will consider the use of medical marijuana by federal supervisees on a case-by-case basis.

During the course of the parties' briefing on the Probation Office's petition, Defendant also filed a motion requesting that the Court exercise its discretion under 18 U.S.C. § 3583(e) to terminate his supervised release at this time. Def. Mot. for Early Termination [Dkt. 72]. Defendant contends that his successful efforts to become a productive citizen by pursuing his education and obtaining and maintaining employment militate in favor of early termination of his supervision. *Id.* at 6. Further, Defendant asks the Court to consider that were he to be sentenced today for the same offenses, his Guidelines range and applicable mandatory minimum would be significantly less than the ten-year term of incarceration he actually served. *Id.* at 7.

The government initially opposed Defendant's request for early termination of his supervision. *See* Gov't Opp. Def. Mot. for Early Termination [Dkt. 80]. However, the government stated at the July 13, 2016 hearing that it no longer opposed Defendant's request because of the unique circumstances of his case, including (1) that he was amenable to entering into a plea agreement prior to trial and did not actively contest at trial his guilt as to the drug-related charges, (2) that if he were sentenced today, his applicable Guidelines range and statutory mandatory minimum would be significantly less than the period of incarceration he actually served, and (3) that he had successfully completed four years of supervised release.

## ANALYSIS AND RECOMMENDATION

### A. Defendant's Use of Medical Marijuana While on Federal Supervision

 Before considering the legality of Defendant's use of medical marijuana un-

der federal law, Defendant asks the Court to decide whether the operative provision of the federal budget leaves the Department of Justice and its sub-component, the Bureau of Prisons, powerless to do anything about Defendant's admitted use of state-sanctioned medical marijuana while under federal supervision.

Section 538 of the Consolidated Continuing Appropriations Act of 2015 states, in relevant part:

> None of the funds made available in this Act to the Department of Justice may be used, with respect to the [states with medical marijuana laws, as well as the District of Columbia] to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.

Consolidated and Further Continuing Appropriations Act of 2015, Pub. L. 113–235, § 583, 128 Stat. 2130 (2014) ("2015 Appropriations Act"); *see also* Continuing Appropriations Act of 2016 ("2016 Appropriations Act"), Pub. L. 114–53, § 103, 129 Stat. 502 (2015) (extending section 583 of the 2015 Appropriations Act). Defendant contends that section 538 prohibits the Justice Department from seeking revocation of his supervised release or incarcerating him if his supervision was revoked. Both actions, according to Defendant, would require the Department to expend appropriated funds in such a fashion as to "prevent [the District] from implementing [its] own State law that authorizes[ ] the use ... of medical marijuana." Def. Mem. Regarding Medical Marijuana [Dkt. 81] at 6.

One can fairly question whether the government's response to a Probation Office petition seeking possible revocation of a defendant's supervised release because of his or her use of medical marijuana would, in any meaningful way, prevent the District from implementing its medical marijuana law. This Court need not resolve that issue here, however, given that the government is not seeking revocation of Defendant's supervision in this matter and the undersigned is not recommending it. Further, wherever the outer limits of section 538's prohibition lie, its bar on the Justice Department's actions does not foreclose a response by this Court to the Probation Office's Petition. *See United States v. Walsh*, 654 Fed.Appx. 689, 697, 2016 WL 3595719, at *5 (6th Cir. Jun. 29, 2016) ("[I]t was not an abuse of discretion to determine that Section 538 did not require the court to halt or alter this criminal prosecution in its final stages.").

 As for whether Defendant's use of medical marijuana is a violation of federal law, the answer is clearer: it is. The CSA designates marijuana as a Schedule I narcotic due to its "high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment." *Gonzales v. Raich*, 545 U.S. 1, 14, 125 S.Ct. 2195, 162 L.Ed.2d 1(2005) (citing 21 U.S.C. §§ 812(b)(1), 812(c)). For that reason, the Supreme Court has found that physicians cannot prescribe marijuana consistent with federal law. *United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 486, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001). Any such prescription is invalid under the CSA. *Id.* at 491, 121 S.Ct. 1711 ("Whereas some other drugs can be dispensed and prescribed for medical use[,] ... the same is not true for marijuana."). Under federal law, marijuana is "contraband for *any* purpose," and in the event of a conflict between federal and state law with regard to marijuana, "federal law shall prevail" pursuant to the Supremacy Clause. *Raich*, 545 U.S. at 27, 29, 125 S.Ct. 2195 (emphasis in original); *see also United States v. Hicks*, 722 F.Supp.2d 829, 833

(E.D. Mich. 2010) ("It is indisputable that state medical-marijuana laws do not, and cannot, supersede federal laws that criminalize the possession of marijuana."). As a result, every federal case addressing the issue identified by either party has held that defendants are prohibited from using state-sanctioned medical marijuana while under federal court supervision. *See, e.g., United States v. Harvey*, 794 F.Supp.2d 1103, 1106 (S.D. Cal. 2011); *United States v. Meshulam*, No. 15–8001 L–CR, 2015 WL 894499, at *3 (S.D. Fla. Mar. 3, 2015); *United States v. Small*, No. CR–10–91–BLG–RFC, 2010 WL 4922510, at *2 (D. Mont. Nov. 29, 2010); *Hicks*, 722 F.Supp.2d at 835.[3]

Nevertheless, because Defendant's use of medical marijuana was not a willful violation of his supervised release, the undersigned recommends that his supervision not be revoked. *See United States v. Vaughn*, 265 Fed.Appx. 761, 762 (11th Cir. 2008) (finding no procedural error in the district court's revocation judgment because "[t]he evidence presented at the revocation hearing ... told the court the reason [defendant] intentionally violated the terms of his supervised release. The court noted these violations were not inadvertent or accidental, but instead were intentional and deliberate"). It is undisputed that Defendant did not appreciate that his use of D.C.-sanctioned medical marijuana was a violation of his release conditions. Further, no judge from this District has previously addressed the issue in a published decision. Indeed, for that reason, the Probation Office itself seeks guidance from the Court on the issue.

Accordingly, the undersigned recommends that the Court clearly instruct the Probation Office that defendants under federal supervision are prohibited from using medical marijuana even if that use is in compliance with D.C. law or the law of any other state. As for Defendant's use of medical marijuana, however, the undersigned recommends that this Court not revoke his supervised release because his use prior to any direction from this Court on the subject was not willful.

## B. Early Termination of Supervised Release

■ The Court may terminate a term of supervised release pursuant to 18 U.S.C. § 3583(e) after one year of supervision if the Court "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). When determining whether to terminate a defendant's supervision, the Court should consider, but need not make express findings, as to the seven factors enumerated in 18 U.S.C. § 3553(a): (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants

---

**3.** Neither the parties nor the undersigned located any cases from this District addressing the issue.

with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *Id.* §§ 3583(e)(1), 3553(a).

Having considered these factors and the entire record of this case, the undersigned recommends that Defendant's supervised release be terminated as successful. As Defendant contends, he should be credited for taking affirmative steps to become a well-integrated member of the community. While incarcerated, he earned his GED and took training courses available to him through the Bureau of Prisons to learn the skills he will need to become a productive member of society. After his release, he successfully completed further training with Project Empowerment and obtained a full-time job with the D.C. Department of Public Works. He has maintained full-time employment for almost four years. Further, he has otherwise complied with all other terms of his supervised release as he understood them.

However, Defendant's good behavior alone is insufficient to warrant early termination of his supervision. This Court has held that a defendant "must show something of an unusual or extraordinary nature in addition to full compliance" to justify early termination. *United States v. Etheridge*, 999 F.Supp.2d 192, 196 (D.D.C. 2013) (internal quotations omitted). After all, "[m]odel prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." *United States v. McKay*, 352 F.Supp.2d 359, 361 (E.D.N.Y. 2005).

The undersigned nevertheless finds that Defendant has met this burden here for the reasons identified both by his counsel and counsel for the government. Most importantly, Defendant's supervision should be terminated to avoid further disparities between the sentence he received in 1998 and the likely sentence similarly-situated defendants would receive if they were convicted of the same offenses today. As this Court is well aware, sentencing laws concerning cocaine base trafficking offenses have changed significantly since 1998. Were he convicted today, Defendant would likely receive a sentence of incarceration less than what he actually completed—perhaps significantly so. Today, the Guidelines provision applicable to the distribution of 242.4 grams of cocaine base recommends a sentence of between 70 to 87 months of incarceration for Defendant's criminal history category, which is substantially less than his Guidelines range in 1998 of 135 to 168 months, or than the 120 months of incarceration he actually served following his re-sentencing in 2008. The 120 months of incarceration that he received upon his resentencing in 2008 was driven by the then-applicable ten-year mandatory minimum period of incarceration. Since 2008, however, the applicable mandatory minimum period of incarceration was halved to five years—half as long as the ten years Defendant actually served in prison. Combining the low end of the applicable Guidelines range today—70 months—with the eight years of supervised release mandated for Defendant's offenses of conviction equates to a total period of incarceration and supervision of 166 months, three months less than the 169 months that Defendant has to date either been incarcerated or under supervision. Thus, by present-day measures of periods of incarceration suitable to Defendant and his crimes, the undersigned believes that Defendant has been punished sufficiently for the crimes he committed twenty years ago.

The undersigned's recommendation also takes into account that the ten-year mandatory period of supervised release to

which Defendant was subject in 1998, and the eight-year mandatory minimum period of supervised release to which he would be subject if he were convicted of the same offenses today, are solely the result of section 860(a) doubling the mandatory minimum period of supervised release because his crimes occurred in a school zone. *See* 18 U.S.C. §§ 841(b)(1)(B)(iii), 860(a). Had that not been the case, then Defendant would have been subject only to a mandatory five-year period of supervised release in 1998 and a four-year period of supervision today. *Id.* However, as Judge Greene found following Defendant's trial, the police manipulated his charges by directing him to school zones for purposes of conducting the narcotics transactions. Tr. 1/5/1998 at 10–12. For that reason, at sentencing, Judge Greene applied a two-level downward departure to Defendant's Guidelines calculation, thereby decreasing his Guidelines range. *Id.* The D.C. Circuit has recently confirmed that such a departure based on sentencing manipulation is with the discretion of the district court. *See United States v. Bigley*, 786 F.3d 11, 15 (D.C. Cir. 2015). Judge Greene had no power in 1998, however, to alter the mandatory doubling of the period of Defendant's supervised release required by section 860(a). Pursuant to its authority under section 3583(e) to terminate Defendant's supervision early, this Court can correct that inequity now.

As of last month, Defendant had served a four-year period of supervised release—the same minimum amount of supervision that a defendant convicted of the sale of 242.4 grams of cocaine base would be subject to today without the school zone enhancement. Given that, as well as Defendant's record of successful rehabilitation while on supervision, this Court should follow the recommendation of defense counsel and the government and terminate

Defendant's supervision as successful at this time.