**UNITED STATES of America**

v.

**Rodney JOHNSON, Defendant.**

**Case No: 13-cr-36 RCL**

United States District Court, District of Columbia.

Signed January 06, 2017

Filed 01/09/2017

## <u>ORDER</u>

Royce C. Lamberth, United States District Judge

Without objection, the Court hereby **ADOPTS** the Report and Recommendation of Magistrate Judge Harvey.

Defendant's use of medical marijuana is a violation of federal law. Defendants under federal supervision are prohibited

from using medical marijuana even if that use is in compliance with D.C. law or the law of any other state.

The Court agrees, however, that in this case the defendant's use was not a willful violation of his supervised release, and therefore defendant's term of supervised release shall not be revoked.

Moreover, the Court agrees with Magistrate Judge Harvey that the conduct of the defendant and the interests of justice lead to the conclusion in this case that the motion for early termination of supervision as successful shall be, and hereby is, **GRANTED.**

It is **SO ORDERED.**

### REPORT AND RECOMMENDATION

#### G. MICHAEL HARVEY, UNITED STATES MAGISTRATE JUDGE

This matter was referred to the undersigned for a Report and Recommendation concerning (1) the United States Probation Office Petition, filed on April 4, 2016, seeking clarification as to whether Defendant's use of medical marijuana is a violation of the conditions of his supervised release [Dkt. 2], and (2) Defendant's oral motion to terminate his supervised release made on May 3, 2016. See 5/03/2016 Minute Entry.

### BACKGROUND

On August 23, 2007, Defendant Rodney Johnson ("Defendant") was arrested for possession with intent to distribute phencyclidine ("PCP") by a Nebraska State Patrol officer. Shortly thereafter, on September 19, 2007, a federal grand jury in the United States District Court for the District of Nebraska returned a two-count indictment charging Defendant with conspiracy to distribute one kilogram or more of PCP in violation of 21 U.S.C. § 846 and

possession with intent to distribute one kilogram or more of PCP in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). On April 21, 2008, Defendant pleaded guilty to the conspiracy charge, which, at the time, carried a starting base offense level of 36 under the United States Sentencing Guidelines ("the Guidelines"). Due to a number of factors, including his minor role in the conspiracy, his acceptance of responsibility for the crime, and his qualification for the safety valve provisions contained in the Guidelines, Chief Judge Laurie Smith Camp reduced Defendant's Guidelines calculation from an offense level of 36 to a 26. Based on Defendant's criminal history category of I, his offense level of 26 resulted in a Guidelines sentencing range of 63 to 78 months of incarceration. Accordingly, on July 10, 2008, Chief Judge Smith Camp entered a judgment sentencing Defendant to 63 months of incarceration followed by a five-year period of supervised release.[1]

Following Defendant's sentencing, on April 30, 2014, the United States Sentencing Commission ("the Commission") submitted to Congress Amendment 782 to the Guidelines, calling for a two-point downward revision to the base offense levels applicable to certain drug trafficking convictions, including Defendant's. See Notice of Submission to Congress of Amendments to Guidelines, 79 Fed. Reg. 25996-02, 2014 WL 1763099 (May 6, 2014). The Commission then promulgated Amendment 788, which permits the revisions contained in Amendment 782 to be applied retroactively. See United States v. Bethea, 209 F.Supp.3d 120, 2016 WL 3951055, at *1 (D.D.C. July 20, 2016). Amendment 782 and its retroactive application became effective on November 1, 2014. Id. As a result, a defendant pleading guilty today to

---

1. Defendant had been detained since his initial arrest on August 23, 2007, and Chief Judge Camp Smith recommended to the Bureau of Prisons in her judgment that he receive credit for his time served.

conspiracy to distribute one kilogram or more of PCP, the crime for which Defendant was sentenced to 63 months of incarceration, would face an initial base offense level of 34 under the Guidelines, as opposed to Defendant's 36 in 2008. *See* U.S.S.G. § 2D1.1(c)(3) (2016).

Defendant was released from incarceration and began his five-year term of supervised release on October 11, 2012. *See* Transfer of Jurisdiction [Dkt. 1] at 1. Following his release, Defendant relocated to Washington, D.C. and his case was transferred to this Court's jurisdiction. *See* Probation Memorandum [Dkt. 1–3] at 1. On April 4, 2016, the Probation Office filed the instant Probation Petition, which arises from Defendant's use of medical marijuana. *See* Probation Petition [Dkt. 2]. As part of the terms of his supervised release, Defendant is required to submit to periodic drug tests. His urinalyses returned positive results for marijuana on four separate occasions: January 29, 2015; April 29, 2015; October 6, 2015; and March 18, 2016. *Id.* at 1–2. After his first positive urinalysis, Defendant informed the Probation Office that he had applied for and received a medical marijuana card from the District of Columbia Department of Health consistent with the District's medical marijuana program. *See* D.C. ST § 7–1671.01 *et seq.* As he told the Probation Office, and as his counsel reiterated before the undersigned at an October 25, 2016 hearing on the matter, Defendant uses medical marijuana to cope with chronic pain from past injuries, including a fractured skull and a punctured eardrum, as well as thyroid-related impairments and anxiety. Probation Petition [Dkt. 2] at 2.

On May 20, 2015, the Probation Office warned Defendant that the use of marijuana, medically-approved or otherwise, violated his conditions of supervised release, and that any future use would result in this Court's intervention. *Id.* After returning three urinalyses with negative results for marijuana, he tested positive for marijuana again on October 6, 2015. *Id.* The Probation Office called for a second conference, at which Defendant provided documentation of his various medical conditions and said that he would not renew his medical marijuana card after it expired on December 19, 2015. *Id.* When Defendant tested positive for marijuana on March 18, 2016, he claimed that he had used his last dose of his previous medical marijuana prescription on February 7, 2016 and explained that he would be seeking to resume his participation in the medical marijuana program in the District of Columbia. *Id.* The government does not dispute that Defendant was using medical marijuana in compliance with District of Columbia law, and the undersigned sees no reason to doubt Defendant's assertions that he was using medical marijuana consistent with District of Columbia law to cope with his various ailments.[2]

Following the April 4, 2016 Probation Petition, Defendant appeared before this Court on May 3, 2016. At that hearing, Defendant moved for an early termination of his supervised release, and the Court instructed the Probation Office to file a supplemental memorandum on the issue before the next hearing. In the memorandum, which was filed on July 29, 2016, the Probation Office noted that Defendant had

---

**2.** At the October 25, 2016 hearing, Defendant acknowledged that he did not have a card permitting him to use medical marijuana from December 2015 to April 2016 and that he used marijuana, albeit marijuana he had obtained prior to the December 2015 expiration of his medical marijuana card, in February 2016. Given its ultimate change in position on Defendant's request for early termination of supervision and the lack of clarity provided to Defendant on his use of medical marijuana while under federal supervision, the government made no objection to Defendant's admission.

returned another urinalysis that tested positive for marijuana on July 27, 2016, and that he had a history of violence that included armed robbery and simple assault. Probation Memorandum [Dkt. 8] at 2. As such, the Probation Office opposed Defendant's motion for early termination of supervision and requested that the Court proceed with a hearing on his violation. *Id.*

Before the Court could hold the violation hearing, the government filed a notice documenting its change in position on Defendant's oral motion for early termination of his supervised released. *See* Notice [Dkt. 10]. Though the government initially opposed Defendant's request, its brief explained that, given the 2014 revisions to the Guidelines, Defendant's term of supervised release should have already expired. *See id.* Taking into account the various reductions in his offense level contemplated by Chief Judge Smith Camp at the time of his sentencing, as well as the two-point retroactive reduction mandated by Amendments 782 and 788 to the Guidelines, the government reasons that Defendant's present-day Guidelines calculation yields an offense level of 24, meaning that the low end of Defendant's Guidelines range would have been reduced from 63 to 51 months of incarceration.[3] *See id.* A lower end sentence under the amended Guidelines framework would have resulted in a total period of incarceration and supervision one year shorter than Defendant's actual sentence. Accordingly, his term of supervised release would have ended one year earlier, i.e., on October 10, 2016. For this reason, and assuming that Defendant's sole violation of his supervised release is his use of medical marijuana, the government, *see* Notice [Dkt. 10], and the Probation Office, *see* Probation Memorandum

[Dkt. 11], withdrew their opposition to Defendant's motion for early termination of supervision.

## ANALYSIS AND RECOMMENDATION

### A. Defendant's Use of Medical Marijuana While on Federal Supervision

■ As a preliminary matter, the undersigned seeks to provide guidance to the United States Probation Office, which finds itself in the curious but increasingly-common position of having to determine whether a defendant's otherwise legal use of medical marijuana under District of Columbia law constitutes a violation of their conditions of federally-enforced supervised released. The impact that Defendant's state-sanctioned marijuana use has on his federal supervision, as well as the government's ability to oppose his request for early termination, are complicated by Section 538 of the Consolidated Continuing Appropriations Act of 2015, which states, in relevant part, that the Department of Justice may not use any funds to prevent states and the District of Columbia "from implementing their own [ ] laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Consolidated and Further Continuing Appropriations Act of 2015, Pub. L. 113–235, § 538, 128 Stat. 2130 (2014) ("2015 Appropriations Act"); *see also* Consolidated Appropriations Act of 2016, Pub. L. 114–113, § 542, 129 Stat. 2242 (2015) (extending Section 583 of the 2015 Appropriations Act). However, seeing as neither party briefed this issue and given that the government is not seeking revocation of Defendant's supervision in this matter, the question of whether the Appropriations Act prevents the government from responding to a Proba-

---

3.  Offense level of 24 equates to a Guidelines range of 51 to 63 months of incarceration for a defendant with a Category I criminal histo-

ry score. *See* U.S.S.G., ch. 5, pt. A, Sentencing Table.

tion Petition regarding Defendant's use of medical marijuana is best left for another day. Wherever the outer limits of Section 538's prohibition lie, though, its bar on the Justice Department's actions does not foreclose a response by this Court to the Probation Office's Petition. *See United States v. Walsh*, 654 Fed.Appx. 689, 696 (6th Cir. 2016) ("[I]t was not an abuse of discretion to determine that Section 538 did not require the court to halt or alter this criminal prosecution in its final stages.").

■ As for whether Defendant's use of medical marijuana is a violation of federal law, the answer is clearer: it is. The Controlled Substances Act ("CSA") designates marijuana as a Schedule I narcotic due to its "high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment." *Gonzales v. Raich*, 54 U.S. 1, 14, 13 How. 1, 14 L.Ed. 25 (2005) (citing 21 U.S.C. §§ 812(b)(1), 812(c)). For that reason, the Supreme Court has found that physicians cannot prescribe marijuana consistent with federal law. *United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 486, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001). Any such prescription is invalid under the CSA. *See id.* at 491, 121 S.Ct. 1711 ("Whereas some other drugs can be dispensed and prescribed for medical use[,] . . . the same is not true for marijuana."). Under federal law, marijuana is "contraband for *any* purpose," and in the event of a conflict between federal and state law with regard to marijuana, "federal law shall prevail" pursuant to the Supremacy Clause. *Raich*, 54 U.S. at 27, 29 (emphasis in original); *see also United States v. Hicks*, 722 F.Supp.2d 829, 833 (E.D. Mich. 2010) ("It is indisputable that state medical-marijuana laws do not, and cannot, super[s]ede federal laws that criminalize the possession of marijuana."). As a result, every federal case addressing the issue has held that defendants are prohib-

ited from using state-sanctioned medical marijuana while under federal court supervision. *See, e.g., United States v. Nixon*, 839 F.3d 885, 887–88 (9th Cir. 2016) (per curiam); *United States v. Harvey*, 794 F.Supp.2d 1103, 1106 (S.D. Cal. 2011), *aff'd*, 659 F.3d 1272 (9th Cir. 2011); *United States v. Meshulam*, No. 15–8001 L–CR, 2015 WL 894499, at *3 (S.D. Fla. Mar. 3, 2015); *United States v. Small*, No. CR–10–91–BLG–RFC, 2010 WL 4922510, at *2 (D. Mont. Nov. 29, 2010); *Hicks*, 722 F.Supp.2d at 835. Indeed, this Court recently joined the chorus of others recognizing that a defendant under federal supervision may not use medical marijuana in compliance with District of Columbia law. *See United States v. Parker*, No. 1:97–cr–00293, ECF No. 88, 219 F.Supp.3d 183, 2016 WL 7015632 (D.D.C. Nov. 30, 2016) ("Defendants under federal supervision are prohibited from using medical marijuana even if that use is in compliance with D.C. law or the law of any other state.").

In light of the government's change in position on Defendant's request for early termination of his supervised release, however, the above analysis is solely intended to provide clarification to the Probation Office. Accordingly, the undersigned recommends that the Court, as it recently did in *Parker*, instruct that defendants under federal supervision are prohibited from using medical marijuana even if that use is in compliance with D.C. law or the law of any other state.

**B.  Early Termination of Supervised Release**

■ With respect to Defendant's oral motion for an early termination of his supervised release, the undersigned notes that the Court may terminate a term of supervised release pursuant to 18 U.S.C. § 3583(e). Section 3583(e) provides that,

after one year of supervision, the Court may terminate a defendant's term of supervised release if it "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). When determining whether to terminate a defendant's supervision, the Court should consider, but need not make express findings, as to the following seven factors enumerated in 18 U.S.C. § 3553(a): (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *Id.* §§ 3583(e)(1), 3553(a).

Having considered these factors and the entire record of this case, the undersigned recommends that Defendant's supervised release be terminated as successful. As Defendant contends, with the exception of his use of medical marijuana, he has not violated the terms of his supervised release. Even his use of the medical marijuana, the undersigned finds, was not the result of a willful violation. Rather, Defendant believed that he was lawfully using medical marijuana to cope with chronic mental and physical pain related to a vari-

ety of impairments. Indeed, the Court has only recently held—for the first time—that the use of state-sanctioned medical marijuana by a federal supervisee is still a violation of federal law. *See United States v. Parker*, No. 1:97–cr–00293, ECF No. 88, 219 F.Supp.3d 183, 2016 WL 7015632 (D.D.C. Nov. 30, 2016). Moreover, since his release from incarceration, Defendant has successfully completed a substance abuse treatment program, maintained full-time employment, and acquired stable residency. Accordingly, the undersigned finds that Defendant should be credited for taking affirmative steps to become a well-integrated member of the community.

█ However, Defendant's good behavior alone is insufficient to warrant early termination of his supervision. This Court has held that a defendant "must show something of an unusual or extraordinary nature in addition to full compliance" to justify early termination. *United States v. Etheridge*, 999 F.Supp.2d 192, 196 (D.D.C. 2013) (internal quotations omitted). After all, "[m]odel prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." *United States v. McKay*, 352 F.Supp.2d 359, 361 (E.D.N.Y. 2005).

The undersigned nevertheless finds that Defendant has met this burden here for the reasons identified both by his counsel and counsel for the government. Most importantly, Defendant's supervision should be terminated to avoid further disparities between the sentence he received in 2008 and the likely sentence similarly-situated defendants would receive if they pleaded guilty to the same offense today. As this Court is well aware, sentencing laws concerning drug-trafficking offenses have changed since 2008. Were he convicted today, Defendant would likely receive a

sentence of incarceration one year shorter than what he actually completed. Indeed, the impetus behind Chief Judge Smith Camp's 63 month sentence was her consideration of Defendant's eligibility for several offense-level reductions, which resulted in an offense level of 26 under the Guidelines. Since 2014, however, the applicable base offense level for Defendant's offense—conspiracy to distribute one kilogram or more of PCP—has been reduced by an additional two points. Combining the low end of the applicable Guidelines range today—51 months—with the five years of supervised release mandated for Defendant's offense of conviction equates to a total period of incarceration and supervision that would have expired last month. *See* Notice [Dkt. 10] at 1. Thus, by present-day measures of sentences suitable to Defendant and his crime, the undersigned believes that Defendant has been punished sufficiently for the crime that he committed a decade ago.

For all these reasons, the undersigned recommends that the Court follow the recommendation of defense counsel and the government and terminate Defendant's supervision as successful at this time.